LOUIS DECK *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY—CHARLES H. STEINER *vs.* LOUIS DECK.

*Assault and Battery—Shooting of Plaintiff, While Trespassing, by Railway Company's Special Policeman—Scope of Employment—Questions for the Jury—Liability of Master for Torts of Servant—Evidence—Instructions.*

Plaintiff with certain companions was discovered stealing a ride at night on a freght train. A special policeman or detective employed and paid by the railway company ordered the men off, and then shot the plaintiff when he was a few feet distant from the track. It was the duty of the detective to protect the company's trains and property and to investigate all violations of law along the line of the road. In an action against the detective and the railway company *held*, that since the detective was present on the scene as an officer of the company and as he had admitted to two witnesses that he did the shooting, it was for the jury to say whether he was acting within the scope of employment, and it was not incumbent upon the plaintiff to prove that the company had either previously authorized the detective to shoot trespassers or had subsequently ratified his act in shooting the plaintiff. Consequently it was error to instruct the jury that there was no legally sufficient evidence to show that the railway company was responsible for the assault on the plaintiff.

*Held*, further, that it was for the jury to determine whether the detective was acting as an employee of the railway company or as an officer of the State, he having then held a commission from the State as a railway policeman.

A detective and special policeman employed by a railway company is not only authorized to eject trespassers from its trains but to arrest them and to use force in so doing.

Plaintiff was ordered from a train of the defendant railway company on which he was stealing a ride and was shot by the company's detective shortly after getting off and while he was on the railway company's right of way. In an action against the company and the detective *held*, that the question whether the plaintiff could see the city of Baltimore if it was daylight at the place where he was ordered off the train was properly disallowed because wholly irrelevant to the issue.

*Held, further*, that evidence showing that the detective also held a commission from the State as a railway policeman was admissible, since it was material to show in what capacity he was acting at the time.

There is legally sufficient evidence to go the jury to prove that the plaintiff was shot by a certain person when two witnesses testify that that person admitted to them that he had shot the plaintiff.

A master is liable for the wrongful acts of his servant when acting within the scope of his employment, although the wrong was not expressly authorized by the master or subsequently ratified.

Whether a servant in committing an assault upon a party was then acting in the scope of his employment is generally a question of fact for the jury.

In an action against a master for an injury caused by the wrongful act of his servant the burden is on the defendant to show that the servant was not acting within the scope of his employment when he committed the tort.

The rule that a corporation is not liable in an action for false arrest and imprisonment for the actions of an agent which were not previously authorized or subsequently ratified does not apply in an action for an assault made by the agent of a corporation acting within the apparent scope of his employment.

In an action of assault when a witness, who was in the company of the plaintiff at the time, was arrested by the defendant a special policeman, testifies in the case, the defendant is not entitled to ask this witness what there was in his record that led defendant to arrest him on that occasion.

Plaintiff's evidence was that defendant, a railway company's detective, wantonly shot him while he was trespassing on the company's property. *Held*, that it was error to instruct the jury that if they find the defendant recklessly and wantonly shot the plaintiff they must find for him unless they find said shooting was done in self defense, because the proposition so stated appears to be a contradiction in terms.

*Held*, further, that it was error to instruct the jury at the request of the defendant that the plaintiff cannot recover unless they find that the defendant intentionally shot the plaintiff, because the right of the plaintiff to recover is founded not on the defendant's actual intention but on his reckless and wanton conduct, as alleged in the declaration.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.), where there was a judgment for $5,000 against the defendant, Steiner.

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*Myer Rosenbush* and *Gustavus A. Korb*, for L. Deck.

Even if no testimony of the general character of the duties of detectives or special officers, employed by private corporations, appeared in the record, it is respectfully submitted that it is a matter of common knowledge that the duties of such employment necessarily involve the use of force to carry out the purposes of such employment, and the duty to remove trespassers is necessarily implied as an incident to such employment. *Haehl* v. *Wabash R. R.*, 119 Mo. 340; *Ala. G. S. R.* v. *Frazier*, 93 Ala. 45; *Duggan* v. *B. & O. R. R.*, 159 Pa. St. 254; *Jackson* v. *2nd Ave. R. R. Co.*, 47 N. Y. 276; *Hoffman* v. *N. Y. C. R. R. Co.*, 87 N. Y. 25; *Smith* v. *Louisville & Nashville R. R. Co.*, 95 Ky. 11; *King* v. *Ill. C. R. R. Co.*, 69 Miss. 245; *Levi* v. *Brooks*, 121 Mass. 501. Or, as stated in *Woods on Master and Servant*, 2 ed., 299 and 309, the question is, not whether the particular act was authorized, but whether the act done *grew out* of the exercise of an authority which the master had conferred upon the servant, in other words, *whether it is an incident to the* authority granted, and done in the line of the servant's duty. *Tiffany on Agency*, 271; *Thompson on Negligence*, 578.

The question whether the act of the servant complained of, was done in furtherance of the master's business, and within the scope of the servant's employment, is *generally one of fact to be determined by the jury.* *Rounds* v. *Del. & Lack. R. R.*, 64 N. Y. 129, *Cleveland* v. *Newson*, 45 Mich. 62; *Brill* v. *Eddy*, 115 Mo. 597; *Illinois Still Co.* v. *Novak*, 184 Ill. 504; *Duggan* v. *B. & O.*, 159 Pa. St. 254; *Southern Pac. Ry. Co.* v. *Kennedy*, 9 Tex. Civ. Appeal 232; *Railway* v. *Hackett*, 58 Ark. 387; *Bremer* v. *Telegraph Co.*, 160 Pa. St. 300; *Wallace*

v. *Merrimac Co.*, 134 Mass. 97; *Southern R. Co.* v. *James* (Ga.), 63 L. R. A. 257; *Lewis* v *Schultz*, 98 Iowa 341; *Adams* v. *Cost*, 62 Md. 264; *N. C. R. R. Co.* v. *Price*, 29 Md. 442; *Note to Ritchie* v. *Waller*, 27 L. R. A. 161; *Consol. Ry. Co.* v. *Pierce*, 89 Md. 502; *Evans* v. *Davidson*, 53 Md. 245.

In *Illinois Steel Co.* v. *Novak*, 184 Ill. 504, the Court said, whether the person who assaulted and beat the appellee was the servant of the appellant company, and whether the duties of such servant and the circumstances of the assault were such as to make the appellant company liable, *were questions of fact*, and not open to review by that Court.

In *Brunner* v. *Telegraph Co.*, 160 Pa. St. 300, the facts were that the plaintiff's horse was frightened by the explosion of a dynamite cap, by an employee of defendant; the employee was not employed to handle caps, but for other purposes entirely distinct; the Court said, there was some evidence from which it might be inferred that the employee who exploded the cap did so at the instance of the employee who had charge of the caps, and as a test for the benefit of the company, and it was held that the evidence was sufficient to submit to the jury on the question of defendant's negligence.

In *Enting* v. *Chicago & N. R.*, 60 L. R. A. 158, the facts showed that it was the duty of the engineer to operate the engine and take care of the torpedoes, and see that they were used at the proper time and place. The Court said: the defendant had placed in the engineer's charge these dangerous agencies, and authorized him to use them at proper times, in placing one of them upon the track as he did, he was doing what the defendant had directly authorized him to do, but he was not doing it at the time or place authorized by the defendant, Court held this did not relieve master from liability.

In *P. C. & S. S. L. R.* v. *Kirk*, 102 Ind. 399, a foreman of a section gang was coming towards tool house on a hand car, with his men after quitting work, track was blocked and he caused hand car to be removed to track of another railroad running parallel to road upon which he was employed; while hand car was running on track of the other road it ran down

a hand car belonging to the other road, and injured a work-man on that hand car, Court said: the prescribed route was over the track of the road in whose service he was, he had no authority to go upon the other, but, encountering an obstacle on the line of his employer, either for his own convenience, or possibly to accommodate the other servants of the master, he judged it expedient or convenient, rather than wait until his line was cleared, to invade the neighboring line and by that means he attained the end of delivering the car, tools and crew to their appointed place, and while he pursued the ser-vice, in an unauthorized and possibly forbidden way, he and those with him were, during the time, in the relation of ser-vants to his employer.   Concede that in going off the em-ployer's line, he pursued a course which was beyond his au-thority, his purpose in doing so was nevertheless to accom-plish an end within his employment, and reasonably, as he supposed, fitted to reach that end.

In *Jackson* v. *Second Ave. R. R. Co.*, 47 N. Y. 276, the facts were that plaintiff got on car and tendered five cents for fare, conductor told him fare was six cents and demanded that sum, plaintiff refused to pay that amount, conductor attempted to eject plaintiff, plaintiff resisted, and conductor struck him in the eye.   Court said: it may be assumed that the conductor was authorized to collect six cents, and also that he was au-thorized and instructed to remove from the car any passenger who refused to pay that sum.   The question whether the act occasioning the injury was willful and malicious, or was mis-takenly conceived to be a necessary use of force to effect *the removal, is a question of fact for a jury.*

In *Chicago City Railway Co.* v. *McMahon,* 103 Ill. 485, the Court said: where clerk of a city railway has assigned to him the general and special duty of looking for and arranging the evi-dence in cases where the company is sued by persons injured, or claiming to be injured, by the carelessness of those intrusted with the management and operation of its street cars, and is *empowered generally* to perform that duty, without special di-rection, with general authority to use his own judgment in the

case, wrongfully or without authority offers money to a witness to keep him from testifying against the company, or to influence his testimony, the company must be held responsible for his act.

In *Lewis* v. *Schultz*, 98 Iowa 341, the facts were that a father authorized his son to act for him on farm, sent son and servant to clear up tract of prairie land; servant, with consent of son, set fire to hay, fire escaped and damaged defendant, held question for jury whether son authorized to set fire or order it, also question for jury whether in setting fire, servant acted under authority implied in scope of employment (quoting with approval *Evans* v. *Davidson*, 53 Md. 245.) See also *Quinn* v. *Power*, 87 N. Y. 535.

In *Levi* v. *Brooks*, 121 Mass. 501, a servant of defendant was intrusted with the seizure of goods, and in doing so, he used force. The Court held the master liable on the ground that the authority to seize goods *impliedly authorized the use of force in case of resistance.*

In *North Chicago City Ry.* v. *Gastka*, 128 Ill. 613, plaintiff, a newsboy trespassed upon the car of defendant, conductor pushed boy off, and he was injured, company held liable.

In *Ala. G. L. R.* v. *Frazier*, 93 Ala. 45, the facts were that plaintiff was on a train which did not transport passengers, which fact plaintiff knew; he was ordered off by brakeman, but refused because of high rate of speed at which train was going; he was assaulted by brakeman, Court said: It is a matter of common knowledge that brakemen on trains are under control of conductor, and that it is their duty to obey his orders, and aid him in maintaining the rules of the service, *similarly it is a matter of common knowledge that a part of a brakeman's duty is to eject or assist in ejecting trespassers from trains*, and company held liable for excessive use of force.

In *Smith* v. *Minch et al.*, 65 Minn. 256, superintendent of corporation who had general charge of premises and employees, caused plaintiff's arrest on charge of disorderly conduct committed several hours before, in unlawfully entering factory and attempting by threats to induce employees to quit work, the.

Court said: this act was done, not for his own interest or benfit, but in furtherance of the master's business, and master held liable.

In *Southern R. Co.* v. *James* (Ga.) 63 L. R. A. 257, the facts were : man employed as night watchman, found plaintiff stealing ride, arrested plaintiff, plaintiff escapes, watchman fired in air to frighten plaintiff, and shot him, held : question for jury as to whether he was acting within the scope of his authority, and company held liable.

In *Rogahn* v. *Moore Mnfg. Co.*, 79 Wis. 575, a foreman was authorized to employ and discharge. Foreman discharged plaintiff and ordered him off premises, then assaulted him ; principal held liable.

In *Duggan* v. *B. & O. R. Co.*, 159 Pa. St., the facts were that detective telegraphed conductor to have two men on train arrested, telegram got in hands of baggage master, who handed it to officer at station, officer boarded train and arrested plaintiff. The Court said : The main question in the case, was the defendant responsible for the violation of plaintiff's rights, may turn on either of two grounds, first : was Sheppard the agent of defendant in ordering the arrest, and had he such authority actual or apparent, as justified the conductor in obeying his telegraphed order ? It is not necessary that the defendant should have authorized Sheppard to make an arrest without a warrant, if he had the general authority, actual or apparent, to act for the defendant in the capacity of detective officer, and such authority included, expressly or by general usage and consent, the power to make an arrest in their behalf, then the mode of executing such power, with warrant or without was immaterial, and the defendant was liable in either event. That is the general ground of the operation of the maxim Respon dent Superior. If the master orders a thing done he is respon‾ sible for the manner in which the servant does it. *There was some evidence of Sheppard's employment as detective for the defendant, and that question may go to the jury.*

In *Towanda Coal Co.* v. *Harman*, 86 Pa. St. 418, the facts were that the plaintiff, a boy and a trespasser, was driven off

the train by a brakeman, who threw coal at him so as to cut
and blind him, and cause him to slip and fall. on the track
whereby he was injured. The Court said : It is conceded that
authority in a conductor to remove a trespasser in a lawful
manner, whether conferred by the rules or not, is implied, and
is incident to his position, we think the same concession must
be made with respect to the authority of a brakeman who finds
a trespasser on the platform of a car, his duties do not pri-
marily pertain to the protection of the cars against intruders,
but he is a servant of the company on the train, concerned in
its management; the implied authority in such a case is an
inference from the nature of his business and its actual daily
exercise according to common observation and experience.
And to the same effect see *Smith* v. *Louisville & N. R. Co.*,
95 Ky. 11, and *Hoffman* v. *N. Y. C. R.*, 87 N. Y. 25.

In *Mobile & Ohio R. Co.* v. *Seals*, 100 Ala. 368, plaintiff was
a trespasser on train, brakeman was instructed by conductor
to put him off, brakeman took pistol, went to side of car, then
fired, plaintiff testified that shot hit him, and caused him to fall
from train, and both legs were crushed so as to necessitate
amputation, held that brakeman was acting within scope of
employment and company liable.    See also *Lipscomb* v.
*Houston & T. R. Co.*, 95 Tex. 5; *Haehl* v. *Wabash Ry. Co.*,
119 Mo. 325 ; *Garreltzen* v. *Duenckel*, 50 Mo. 104; *Ry. Co.*
v. *Sykes*, 96 Ill. 162 ; *Eichengreen* v. *Ry. Co.*, 96 Tenn. 230.

It would be a novel proposition to hold that a corporation
should be exempt from liability for any acts of its servants,
merely because such servant had been commissioned as a
peace officer by the State, and that every wrong done by such
servant, should be charged to his official character. "This
would enable a proprietor to have all his employees commis-
sioned as police officers, and thus escape all liability for their
misconduct." *Dickerson* v. *Waldron*, 135 Ind. 507; *Brill* v.
*Eddy*, 115 Md. 597; *Ry. Co.* v. *Hackett*, 58 Ark. 387.

*W. Irvine Cross* and *Duncan K. Brent*, for the B. & O. R.. Co. and Steiner.

To hold a corporation liable for a tortious act committed by its agent, the act must be done by its express precedent authority or ratified and adopted by the corporation.    Nor is a corporation responsible for unauthorized and. unlawful acts, even of its officers, though done *colore officii.*    To fix the liability, it must either appear that the officers were expressly authorized to do the act, or that it was done *bona fide*, in pursuance of a general authority, in relation to the subject of it, or that the act was adopted or ratified by the corporation. *Railway Company* v. *Peacock*, 69 Md. 257; *Ry. Co.* v. *Brewer*, 78 Md. 394; *Turnpike Co.* v. *Green*, 86 Md. 167; *Carter* v. *County*, 94 Md. 625; *Carter* v. *Howe Machine Company*, 51 Md. 278; *Sinclair* v. *Baltimore*, 59 Md. 597; *Tolchester Imp. Co.* v. *Steinmeyer*, 72 Md. 317; *Barabatz* v. *Kabat*, 86 Md. 36.

The sum of plaintiff's testimony is: (1) The plaintiff was shot, according to his own statement, while he was doing nothing but walking near a freight train.

(2.) Nobody saw the shooting.

(3.) Steiner several months after the shooting, voluntarily confides to a person whom he is arresting, that he shot the plaintiff.

(4.) Steiner proves that at the time of the shooting he was a Baltimore and Ohio policeman or detective.

Assuming, as we must, all these facts to be true, will the sum of them or will any combination of them render the defendant, the Baltimore and Ohio Railroad Company, liable? There is not one jot of evidence that Steiner, at the time of the shooting, was engaged on the Railroad Company's business, nor is there evidence of any express antecedent authority of Steiner from the Railroad Company to do this shooting, or of any subsequent ratification by the Railroad Company of the shooting.    On the contrary, the evidence, and the only evidence is, that the plaintiff was shot by Steiner for no cause whatever while he was walking along side of a railroad train. This being so, the only question can be, therefore, is there any

evidence of the shooting being done in pursuance of a general authority in relation to the special matter, that is, has any evidence been offered tending to show that the shooting, as testified to in this case, came within the discharge of Steiner's duty as a detective, and within the scope of his authority. The only evidence which has any bearing on this question is that of the witness, Grannan, and which was evidence as to the general duty and scope of the employment of railroad detectives in the witness' regime, which was more than two years before the shooting took place. We submit that there is nothing in the plaintiff's case, express or implied, that shows or pretends to show a single definite or indefinite instruction or order as to the duties of Baltimore and Ohio Railroad detectives at the time this shooting occurred. There was evidence that Steiner held a commission issued by the State of Maryland, and the Act which provides for the issuance of such commission defines to some extent the powers and authority of officers who are appointed in pursuance of that Act. This, however, is only the general constabulary power conferred by law on policemen in the city of Baltimore. This then being all the evidence as to Steiner's authority, whether general or special, where is the evidence that the shooting, as testified to in this case, comes within the discharge of his general authority or duty as a detective? It cannot be said that it is within the scope of the general duties of a railroad detective to shoot a person who is walking beside a railroad train, particularly when there is no proof that the detective ever saw the person he shot on the train, or committing any other misdemeanor, for which he might be arrested, or that an arrest was attempted at the time of the shooting: Is not this a clear case, as made out by the evidence of an unprovoked assault? How could a Railroad Company employ a man whose general duty it is to shoot anybody he might see walking near a train? It makes no difference, we submit, so far as the evidence shows, whether Steiner was a detective or not, for neither a detective nor anyone else would have a right to shoot in the manner testified to in this case, and if there is no *right* to shoot, how can the *duty* to shoot be said to exist?

We therefore submit that a most careful scrutiny of the plaintiff's evidence, on which alone the question is to be decided, will disclose no evidence which in any way connects the defendant, the Baltimore and Ohio Railroad Company, with this shooting. If the plaintiff's evidence showed that the plaintiff had been shot by a Baltimore and Ohio Railroad detective, and if it was further shown that the detective at the time of the shooting was engaged on the company's business, and also what were the duties of a railroad detective at the time, there might be some room for argument, even without proving express antecedent authority or subsequent ratification, as to whether or not the particular shooting came within the general scope of authority as proved. But that, however, is not this case. The evidence in this case discloses no suggestion of what were the general duties or authority of a Baltimore and Ohio Railroad detective at the time the shooting occurred, or that this particular detective was engaged on the Railroad Company's business.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages for personal injury.

Louis Deck sues the Baltimore and Ohio Railroad Company and Charles A. Steiner. The ground of the action is that Steiner who is alleged to have been in the employ of that company, in the regular course of his business, shot the plaintiff, seriously and permanently injuring him. The defendants pleaded the general issue.

During the taking of the testimony of the plaintiff which was offered to establish the responsibility of the Railroad Company for the assault and shooting of the plaintiff, the plaintiff reserved four exceptions, which relate to rulings on the evidence. At the close of the plaintiff's testimony on this question a prayer at the instance of the defendant was offered taking the case from the jury—from which ruling the plaintiff also excepted. Judgment was entered in favor of the Railroad Company and the plaintiff has appealed.

In the further progress of the case against the remaining

defendant, Charles A. Steiner, he reserved two exceptions, one to the ruling on evidence and the other to the granting of the plaintiff's two prayers and the rejection of his first prayer. Judgment was entered against the defendant, Steiner, and he also appealed.    There are therefore, two appeals in this record and we will consider them in the order in which they were entered.    But before doing so we will briefly state the facts of, and the circumstances under which, the shooting was done.

It appears from his own testimony and that of other witnesses, that on the first of July, 1899, the plaintiff and several companions, without authority, boarded a freight train of the defendant company and rode thereon to Oella a short distance beyond Ellicott City, where they spent the day.   On the same evening they boarded another freight train of the same company, without authority, for the purpose of returning to Baltimore and when it was approaching the city and was near Mt. Clare station the plaintiff and his companions were ordered to leave it.   The plaintiff testifies that he was already off the train and about fifteen feet from it when he heard several shots fired, by one of which he was hit and seriously injured.   First, then we will consider the questions presented by the appeal of the plaintiff.

The plaintiff's first exception was taken to the refusal of the Court to allow the witness to say whether from the point where he was ordered off the train, if it was daylight, he could see the city of Baltimore, if looking towards the city.   We are unable to see what relevancy the question or the answer thereto could possibly have had to the issues involved.   The shooting took place about 11 o'clock at night—and whether the city of Baltimore could or could not have been seen in daylight from the point indicated does not appear to be important or relevant.   Nor do we find anything in the plaintiff's second exception which was taken to the ruling out of the testimony of the witness Thomas tending to show that the defendant Steiner was a Battimore & Ohio Railroad detective, or testimony as to the fact of Stener's employment by that company as a detective was subsequently admitted without objection.

We find no error in the ruling complained of in the plaintiff's third and fourth exceptions. After testifying that he was a Lieutenant of Police and was employed by the Baltimore and Ohio Railroad Company as a policeman at the time of the shooting and that he was paid by that company, the defendant Steiner was asked on cross-examination whether he held a commission as policeman from the State. This question was allowed to be answered against the objection of the plaintiff. This constitutes the third exception. The witness answered that he had such a commission and he was asked to produce it, which he did, and read it to the jury. Whereupon the plaintiff filed a motion to strike out all the testimony of this witness in relation to witness being commissioned as police officer by the State of Maryland. This motion was overruled, and this action of the Court is the ground of the plaintiff's fourth exception.

We think it was very material that the jury should have been informed exactly how and in what capacity Steiner was acting. He had testified in chief that he was a police officer of the defendant, that he was employed and paid by it, but this was not all. He was also a State's officer and as such commissioned as a special policeman of the Baltimore and Ohio Railroad Company. It was but right, we think, that the defendant should be allowed to inform the jury that it had availed itself of the provisions of law which were passed for the purpose of giving corporations the benefit of capable men commissioned by the State to protect their property, and that it had not selected one of its own employees for that purpose.

This brings us to the consideration of the only important question involved in this appeal and that is presented by the plaintiff's fifth exception which is based on the ruling of the Court granting the defendant's prayer taking the case, or this branch of it, from the jury.

Was there any evidence in the case legally sufficient to prove that the defendant Steiner did the shooting complained of?

In the first place the plaintiff himself testifies that shortly

after he was shot and lying upon the ground, Thomas, a brakeman came over with a lantern and Steiner came also and asked what was the matter; that plaintiff replied that he was shot and Thomas picked him up and showed Steiner where the ball entered, and Steiner said "yes, if I hadn't shot the son of a bitch I would have kicked his ribs in." It is true that the witness Thomas contradicted this statement of the plaintiff, but it was for the jury to determine which one they would believe. Again the witness Carlin testifies that Steiner told him he shot the plaintiff. We conclude therefore, that the testimony on this point was legally sufficient to show by whom the shooting was done.

Second. Is there any legally sufficient evidence in the case that Steiner was in the employ of the defendant company at the time of the shooting? This question must also be answered in the affirmative, for Steiner himself testifies that he was employed and paid by the defendant company as policeman at that time, and the commission he held from the State showed that he was appointed as "special policeman" of the Railroad Company. Other witnesses testified to the same effect, either that he was a detective of the company as testified to by the plaintiff and the witness, Morrison, or that he was such special officer or policeman at the time in question.

But the important question remains to be considered whether at the time of the shooting Steiner was attending to the business of the company, and if so, whether he was acting within the scope of his duty.

Assuming, for if what we have already said is correct, we have a right to assume, that Steiner was present at the time of the shooting and that he was in the employ of the company as its special officer, detective or special policeman, and assuming also that the plaintiff and his companions had been on one of its trains as trespassers and acting in a disorderly manner, it would not require much testimony to establish the fact that he was there not on any business of his own, but for the purpose of protecting the company's employees and its property.

This was a laudable and proper purpose, but we not think it incumbent on the plaintiff, under the circumstances of this case, to offer affirmative and direct testimony to establish that fact. He was employed by the company and he was there, and it will not be assumed he was there for any other purpose but to perform his duty—that is, as one of the witnesses said, "To look after all depredations on the company's property, such as robbing cars, breaking into trains, attempting to derail trains and *all violations of the law along the line of the road."* If then he was present as an officer of the company and as two witnesses testified he admitted he did the shooting, was he under all the circumstances of this case acting within the scope of his duty?    Whether he was or was not so acting is ordinarily a question for the jury.    It was contended on the part of the defendant company that conceding the testimony we have already recited to be true, namely, that Steiner admitted· the shooting, still the defendant cannot be connected therewith unless there is some evidence of an express antecedent authority to Steiner to do the act or of a subsequent ratification thereof by the defendant.    But the authorities cited to sustain this proposition are cases of false arrest or malicious prosecution and the principles announced therein have no application to this case.    Thus in the recent case of *Boyer* v. *Coxen*, 92 Md. 366, BOYD, J:, delivering the opinion of the Court said: "This Court has heretofore followed the rule that the master is not exempted from liability for   *   *   *   damages merely because the act complained of was done by a servant, and in many cases exemplary damages have been allowed against the master for acts done by the servant, *without express authority from the former or ratification by him having been* shown."    See also *Evans* v. *Davidson*, 53 Md., p. 245–249.    Again it is settled in this State as we have said, that whether the act of the servant complained of is within the scope of his duty while acting in the furtherance of his master's business is generally to be determined by the jury as a matter of fact and not by the Court as a matter of law.    *Consolidated R. Co.* v. *Pearce,* .89.Md. 503:    It may be very difficult, as is illustrated in this

case, for the plaintiff always to obtain full and complete proof
of the terms of the servants employment, and therefore it was
held, as we said in the case just cited, citing *Cleveland* v. *New-
son*, 45 Mich. 62, that the burden was on the defendant to
show that the servant was not engaged in the course of his
employment.  ·But it is clearly shown by the testimony of the
plaintiff that Steiner was employed by the defendant company
as a police officer and detective, and it is further shown that,
as such, it was his duty to protect the company's trains and
property and to look after all violations of the law along its
road.     And even if this proof had not been adduced it would
have been proper for the jury to infer from the nature of
Steiner's employment that he was authorized by the defendant
not only to drive trespassers from the train, but to arrest them
for the violations of the company's regulations.     And it can
not be said that because the defendant did not authorize the
shooting, that therefore it cannot be held liable for the result-
ing injury to the plaintiff.     In *Evans* v. *Davidson*, 53 Md. 245,
it appeared that the defendant had on his farm a negro, Lewis,
who was employed to do general farm work; that on the day
the plaintiff's cow was killed the defendant was away from
home; that Lewis in driving the cow from the plaintiff's corn
field negligently struck her with a stone and killed her; that
the defendant had given no orders in regard to driving the
cattle out of the field and that he did not know the cow was
in the corn until after she was killed.     The Court below took
the case from the jury; but ALVEY, J., in delivering the opin-
ion of this Court said.  "If the servant be acting at the time
in the course of his master's service and for his master's ben-
efit, within the scope of his employment, then his act though
wrongful or negligent, is to be treated as that of the master,
although no express command or privity of the master be
shown.     This general principle is sanctioned by all the author-
ities."     And in determining whether there was legally sufficient
evidence to go to the jury we said in the same case that in the
very nature of the employment there must be some *implied
authority and duties* belonging to it, and it was held, reversing

the Court below, that there was legally sufficient evidence to show the servant was acting in the course of his employment, and that the first and second prayers of the plaintiff leaving it to the jury to find whether the servant had so acted should have been granted. Quite a number of authorities are cited on the brief of the appellant to the effect that in the very nature of the employment of a detective and special officer there are some implied authority and duties belonging to it, but we do not consider it necessary to discuss them, for "we suppose all would ·say" that it would be a positive duty of one who was employed as Steiner was by the defendant as a detective and special policeman, not only to eject trespassers from its trains, but to arrest them and use force in so doing.

This brings us to the question as to whether Steiner was acting as an employee of the company or as a commissioned officer of the State when the injury was inflicted. It appears to be clear from the testimony that he was employed and paid by the defendant at the time indicated and that he was then acting as policeman and detective. As we have already said it must be assumed that he had some implied authority and duties, even if none were expressly proved, and it certainly is not assuming very much to infer from the general nature of his employment that it was his duty to remove trespassers from the train. It must be remembered that, so far as the evidence shows there was not an actual attempt to arrest the plaintiff, but he was shot by the detective or policeman a few moments after he jumped from the train and before he had gone more than ten or fifteen feet from it.

This is a very different case from *Tolchester Beach Imp. Co.* v. *Steinmeier,* 72 Md. 313. In the first ·place the case just cited was an action to recover damages for false imprisonment and it was decided that the defendant company could not be held liable without proof of express precedent authority or subsequent ratification ; but, as we have seen, this rule is not applicable to the case now before us. Again the arrest, which was the injurious act complained of in Steinmeier's case was not made on the premises of the company, nor, said the

Court, "can it be said that it was done in the preservation of the company's property, for assuming that in the collection of drift logs the superintendent was acting for the company (which its president denies), still it is not contended that the plaintiff was interfering to prevent their securing and collection." The testimony only shows that the arrest was ordered and made because of the plaintiff's assault. And further it is said that that which the officer who made the arrest did, although paid by the defendant, was in the execution of the criminal law upon his own view of the affair, without warrant, and in discharge of what he supposed was his duty at common law, and that his act in no way enured to the benefit of the defendant company. It will be observed also that we said in the *Steinmeier case* that for the purposes of that decision, it was not necessary to hold that the officer who made the arrest was in no sense an officer of the company, and that if called on to enforce its regulations and he did so purely because of his relation to the company, it would be liable for acts done within the scope of his duty as such employee, although primarily he was a State officer. And whether he was acting in one capacity or the other is a question for the jury. *Dickerson et al.* v. *Waldron,* 135 Ind. 507–526; *Brill* v. *Eddy,* 115 Mo. 597–605; *Railway Co.* v. *Hackett,* 58 Ark. 387.

We are of opinion, therefore, that there is legally sufficient evidence to be found in the record to have justified the submission of the case to the jury, and the Court below having refused to do so, its judgment in favor of the defendant must be reversed.

> *Judgment reversed with costs and new trial awarded.*

The remaining questions to be considered arise on the appeal of *Charles H. Steiner* v. *Louis Deck,* which, as we have seen presents two questions; first, as to the correctness of the ruling of the Court in refusing to allow the appellant, defendant below, to ask witness Carlin what there was in his record or in his standing the community, that led Steiner to arrest

him merely because he saw him on that occasion; and secondly, whether there was error in granting plaintiff's two prayers and the rejection of the defendant's first prayer.

*First Exception.*—The record does not state what was the object in asking this question; on cross-examination however it would appear to have been the purpose of counsel to have the witness impeach his testimony already given, but the answer if any had been given must have been in the nature of a guess or an opinion, for it was impossible for the witness to state as a fact what there was in his record or standing which induced Steiner to arrest him merely because he saw him on that occasion. We find nothing in the record to support the assumption that the witness had been arrested merely because Steiner saw him. On the contrary the witness had testified that he was walking through the company's yard, that he was on the company's property, although he said he thought it was county property. What he may have meant by this last statement does not appear. If, as we have said, it was the purpose of counsel to impeach the witness, this could have been done (1) by disproving the fact testified to by him. But this was not attempted although there was ample opportunity to have done so; or (2) by general evidence affecting his veracity. But in impeaching the credit of a witness the examination must be confined to his general reputation and not be permitted as to particular facts. 1 *Greenleaf on Evidence*, sec. 461. If it was intended to show that he had been indicted and convicted of some crime that would go to impeach his veracity the proper evidence of such convictions should have been produced; but in spite of the fact that Steiner was subsequently examined as a witness in behalf of the defendant he did not deny the testimony given by the witness Carlin and it may be, therefore, assumed that it was true and if so the defendant was not injured by the refusal of the Court to allow the question to be asked.

*Second Exception.*—Was there any error in granting the plaintiff's prayers? The first of these prayers asked the Court to instruct the jury "that if they find from the evidence that

the plaintiff was walking on or near the tracks of the Baltimore and Ohio Railroad Company as testified to and that the defendant came within a short distance of the plaintiff and recklessly or wantonly fired a pistol towards the plaintiff and thereby shot and wounded him, then their verdict must be for the plaintiff, unless they are satisfied from the evidence that *said shooting* was done for the purpose of preventing the plaintiff from killing said Steiner or inflicting upon him great bodily harm and that the facts at the time of the shooting were such as to warrant the reasonable belief in Steiner's mind, in the honest exercise of his judgment that there was no other reasonably possible, or at least probable, means of preventing such injury to said Steiner and that his act was one of necessity." By this instruction the jury are told that if they find the defendant recklessly and wantonly shot the plaintiff they must find for him, unless they find *said shooting* was done in self defense. This proposition appears to be a contradiction in terms, for if the shooting was found from the evidence to have been reckless and wanton, the jury could not, properly, from the same evidence, have found it to have been done in self defense. In other words having found from all the evidence that the shooting was unjustifiable they could not find from the same evidence that *said shooting* was justified by an honest belief of Steiner that he was in danger of great bodily harm. We find no objection to plaintiff's second prayer. It properly states the rule of the measure of damages in a case like this. Defendant's first prayer told the jury that the plaintiff cannot recover a verdict unless they find that the defendant intentionally shot the plaintiff.

We cannot accede to this proposition for the right of the plaintiff in this case to recover is founded, not on the actual intention of the defendant, but on his reckless and wanton conduct as alleged in the *narr.*

By reason of the error in granting the plaintiff's first prayer the judgment against the defendant, Charles A. Steiner, will be reversed and the cause remanded for a new trial.

*Judgment reversed with costs and a new trial awarded.*

(Decided January 12th, 1905 )