## THE CUMBERLAND BREWING CO. OF ALLEGANY COUNTY, a Corporation,

### *vs.*

## ABIE FELDSTEIN, An Infant, by His Father and Next Friend, Oscar Feldstein.

*Negligence: delivering ice; injury to plaintiff with ice tongs.*

The employee of an ice company was serving out ice for purchasers from a platform; a purchaser had a small wagon against the platform, and was standing back some four or five feet away; the employee was loading ice on the wagon with a pair of tongs, and on lowering the ice and raising the tongs he injured the plaintiff's eye; *held,* that in view of the facts, a prayer taking the case away from the jury was improper.  p. 46

*Decided February 13th, 1919.*

Appeal from the Circuit Court for Washington County. (Keedy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Frank G. Wagaman* (with whom were *James A. McHenry* and *J. A. Mason,* on the brief), for the appellant.

*Albert A. Doub* (with whom were *Urner G. Carl, Alexander B. Hagner* and *Daniel W. Doub* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought to recover for injuries alleged to have been caused by the negligence of the servant or agent of the appellant.

In September, 1917, the appellant, the Cumberland Brewing Company of Allegany County, was conducting a brewery and was also engaged in the manufacture and sale of ice, and owned and operated a large plant for that purpose in the City of Cumberland. It was the custom of the appellant to sell and deliver ice to customers who went to the plant to purchase it from a platform or porch on the Franklin street side of the plant, and the company employed agents or servants for that purpose. About 3 o'clock in the afternoon of September 14th the plaintiff, a boy about 10 years of age, was sent by his mother to the appellant's plant to purchase for her a piece of ice. She gave him a nickle with which to pay for the ice, and he took with him a two-wheel wagon or cart in which to carry the ice home. He was in the habit of going to the plant two or three times a week to get ice for his mother, and on the afternoon in question when he got to the plant he, as was his custom, backed his cart up to the platform to wait until the employees of the appellant could wait on him. When he first reached the plant two young men, John Brode and Happy Wisenmiller, were on the platform. John Brode was waiting on the customers, and he left and told Wisenmiller to wait on them. The plaintiff further testified that there was always someone on the platform to wait on the customers, and that he generally purchased the ice from whomever happened to be there for that purpose; that after Wisenmiller waited on Lewis Baker, by placing a block of ice in his wagon, he asked the plaintiff if he wanted ice, and the plaintiff told Wisenmiller that he wanted a 5-cent piece of ice; that plaintiff's cart was backed up against the platform; that there was a box about twenty inches square on the cart, and the tongue of the cart was about three feet long; that he was standing with his right foot on the tongue to stop the cart from turning over when the ice was put in the box;

that Wisenmiller placed the ice in his cart with ice tongs, and when he was drawing the ice tongs up the sharp part of the tongs struck him, the plaintiff, in his eye. Other evidence in the case shows that as a result of the injury the plaintiff's eyeball was badly lacerated and his eye had to be removed five days after the accident.

Lewis Baker testified that he went to defendant's plant every other day for ice; that "it was a regular sales place for selling ice. Johnnie Brode was the regular boy who waited on customers. When he wasn't there I don't know who waited on customers. I have been waited on by Billie Fitzgerald and Shinholtz, who were employees of the brewery. I know Wisenmiller by name, and have seen him work at the defendant's plant. He has been working there for some time, and I think he worked in the bottling department. On the day that Abie Feldstein was hurt, the 14th of September, 1917, I went to the plant for ice for my mother and took a wagon along and got the ice in it. 'Happy' Wisenmiller waited on me. Brode did not. When I got to the platform 'Happy' Wisenmiller was sitting on the platform, I think, or over there some place. I think he asked me whether I wanted ice, and I told him I wanted a nickle's worth of ice. Then I think he went in the plant and got the ice. He cut it in there and pushed it out with his foot and lifted it in my wagon with the tongs. He was standing at about the middle of the platform when he lifted it in my wagon."

Wisenmiller, who was called as a witness by the defendant, testified on cross-examination as follows: "I did jag the boy's eye out with the ice tongs. I was putting that ice into his wagon as a favor because he asked me to—that is the whole reason and there is no other reason. It was a 50-pound piece and I did that merely because the boy asked me. I had never seen him before, and for that reason alone I was putting the 50-pound piece of ice in his wagon. That is the sole and only reason. I didn't go to hit him."

According to the testimony adduced by the defendant, Wisenmiller was employed by the defendant in its "bottling

works," and he "did not have any work for the defendant outside of the bottling house at any time, * * * except on occasions when they were shorthanded and had new men on the freight trucks. That is freight trucks—hauling beer and ice to freight cars." He "never sold any ice from the platform and did not have any authority to sell or deliver ice from the platform." Wisenmiller testified that on the day of the accident he finished his work at 5 o'clock in the evening, and that after he had been discharged for the day, and when he was leaving the defendant's plant, he saw the plaintiff and Baker standing on the platform or porch; that plaintiff had a "pair of ice tongs in his hands wrestling with" a fifty-pound piece of ice and asked him (the witness) to lift it in his wagon, and that he took the tongs from the plaintiff "and took the ice and put it in his wagon for him."

The trial of the case resulted in a verdict for the plaintiff for $2,500.00, and this appeal is from the judgment on that verdict.

The only exception in the case is to the ruling of the Court below on the prayers, and in support of that exception the contentions of the appellant in this Court, as stated in its brief, are:

"First—There is no evidence in the case legally sufficient to show any negligence on the part of Wisenmiller; and

"Second—The evidence in the case shows that Wisenmiller, at the time of the injury, was not a servant of the defendant, and, if he were, he was not then acting within the scope of his employment."

The defendant, as we have said, was engaged in the manufacture and sale of ice, and maintained a platform or porch from which its employees or servants sold and delivered the ice to its customers. The plaintiff and other customers of the defendant were accustomed to purchase and receive delivery of their ice from whoever was on the platform to wait on them. It was the duty of the servants of the defendant in

delivering ice to defendant's customers, and in using ice tongs for that purpose, to exercise due care to avoid injury to them, and it is not denied that the defendant would be liable to them for any injury resulting from a neglect of that duty. The appellant insists that while the evidence shows the plaintiff was injured, there is nothing in the testimony of the plaintiff to show any act of negligence on the part of Wisenmiller who delivered the ice to him. It is true the plaintiff did not say that Wisenmiller *carelessly or negligently* swung the tongs towards him, but his testimony does indicate his position on the pavement to have been at least several feet from the platform, and shows that the tongs were in the hands of Wisenmiller and under his control. There is nothing in the evidence to suggest that the plaintiff moved from the position indicated, or that any act of his contributed to the injury. On the contrary, Wisenmiller testified that *he* jagged the plaintiff's eye out with the ice tongs. Under such circumstances the Court below would not have been warranted in holding that there was no evidence of negligence on the part of Wisenmiller.

In reference to the second contention of the appellant, it would seem only necessary to say that while the evidence adduced by the defendant tended to show that the accident did not occur until after five o'clock in the afternoon, and after Wisenmiller had been discharged for the day and was no longer in the employ of the defendant, the plaintiff and his mother both testified that the plaintiff was injured between three and half-past three o'clock in the afternoon. The defendant maintained the platform as the place for the sale and delivery of its ice by its servants and employees, and its customers purchased their ice from whoever happened to be on the platform to sell and deliver it. It is conceded that Wisenmiller was in the employ of the defendant on the day of the accident, and the plaintiff testified that Wisenmiller sold and delivered the ice to him from the platform where the defendant's employees usually conducted the defendant's

business. In the case of *Consolidated Ry. Co.* v. *Pierce*, 89 Md. 495, where this Court held that the question whether the act of the servant complained of was done within the scope of his employment is generally one of fact to be determined by the jury, JUDGE BOYD, speaking for the Court, said: "The question whether the act of the servant complained of was done in furtherance of the master's business, within the scope of the servant's employment, is generally one of fact to be determined by the jury. In *Cleveland* v. *Newsom*, 45 Mich. 62, it was held that the burden was on the defendant to show that the servant was not engaged in the course of his employment. In *Rounds* v. *Delaware, Lack. & West. R. R. Co.*, 64 N. Y. 129, the Court said it is ordinarily a question to be determined by the jury." In the case of *Deck* v. *Balto. & Ohio R. Co.*, 100 Md. 168, JUDGE FOWLER, after referring to the language of the Court in *Consolidated R. Co.* v. *Pierce, supra*, said: "It may be very difficult, as is illustrated in this case, for the plaintiff always to obtain full and complete proof of the terms of the servant's employment, and therefore it was held, as we said in the case just cited, citing *Cleveland* v. *Newsom*, 45 Mich. 62, that the burden was on the defendant to show that the servant was not engaged in the course of his employment." In view of the evidence referred to, and the authorities cited, it would seem clear that there was no error in the action of the Court below in refusing to direct a verdict for the defendant on the ground that there was no evidence in the case to show that Wisenmiller, at the time of the accident, "was acting in the course of his master's service and for his master's benefit within the scope of his employment."

As the contention of the appellant referred to present the only objections urged against the ruling of the Court below on the prayers, we will affirm the judgment appealed from.

*Judgment affirmed, with costs.*