### SEYMOURE v. DIRECTOR GENERAL OF RAILROADS.

(Court of Appeals of District of Columbia. Submitted May 1, 1923. Decided June 4, 1923.)

No. 3912.

1. Carriers ⚌241—News agent held a "passenger."

An employee of a news company, who was permitted by a carrier to ride on its trains to sell magazines, fruit, and candy to the passengers, there being no evidence as to the relationship between his employer and the carrier, was clearly a "passenger."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Passenger.]

2. Carriers ⚌320(4)—Whether special officer acted within scope of authority as railroad employee in assaulting passenger held jury question.

Where a news agent was assaulted by an employee of the railroad, who was also a special officer appointed under Code Va. 1919, § 3944, and who accused the agent of flirting with a passenger, it was a question for the jury under the employee's testimony, whether he made the assault in his capacity as employee, or as a public officer.

3. Railroads ⚌5½, New, vol. 6A Key-No. Series—Director General suable for injuries inflicted by his employee.

The United States has consented that the Director General of Railroads can be sued for compensation for injuries inflicted by his employee, a special officer, in making an assault on a passenger while acting within the scope of his employment.

Appeal from the Supreme Court of the District of Columbia.

Action by Charles J. Seymoure against the Director General of Railroads. Judgment for defendant on directed verdict, and plaintiff appeals. Reversed and remanded for a new trial.

Alvin L. Newmyer and Milton W. King, both of Washington, D. C., for appellant.

George E. Hamilton and John J. Hamilton, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District upon a directed verdict for the defendant at the close of plaintiff's evidence, in an action to recover damages for personal injuries sustained by the plaintiff as the result of an assault upon him by a special officer employed by the Southern Railway Company. The facts, as disclosed by plaintiff's evidence, are to the following effect:

Plaintiff was employed by the Union News Company to vend magazines, fruit, and candy on trains. His run, at the time of the occurrence giving rise to this action, was from Washington, D. C., to Danville, Va., where he would wait for a return train. Just what was the arrangement between the news company and the railroad does not appear, but it does appear that the railroad company recognized plaintiff's right to be on the train.

On the occasion in question, it was nearly midnight when the train arrived at Danville. Plaintiff, as was his custom, engaged a porter to take his stock to the baggage room. The porter placed the stock on a truck, and plaintiff followed the truck. When plaintiff had reached a point opposite one of the coaches, a gentleman whom he had met on the train trip, and whose wife was with him, and to whom plaintiff had loaned magazines, raised a window and informed plaintiff that he had forgotten his magazines. Thereupon plaintiff went back to get the magazines, receiving them through a window. He shook hands with the gentleman and started back toward the baggage room, whereupon Special Officer Regan came up from behind and seized him and said, "What do you mean by flirting?" Plaintiff replied, "You are mistaken, sir; I was not flirting." Regan then said, "What do you mean? Do you mean to call me a liar?" Thereupon, according to plaintiff's testimony, Regan viciously and brutally assaulted him, inflicting serious injuries upon him. Regan was a large and powerful man, while plaintiff was 4 feet 9 inches tall and weighed only 86 pounds. Regan threatened to lock plaintiff up, but released him before they reached the baggage room, and plaintiff, as was his custom, returned to Washington on the next train.

Officer Regan was called as a witness for the plaintiff and testified as follows:

"I live at Danville, Va., and lived there in 1918. I was employed in 1918 by the Southern Railway Company as a special officer. My duties were police duties of the railway company, and also of the city of Danville. My police duties with the railway company covered the Danville division, between Monroe, Va., and Salisbury, N. C. I was paid by the Southern Railway Company. I have a badge as special officer. In doing police duty for the railway company I would patrol the railroad property. That included the station where trains came in and went out. I was supposed to keep order among passengers, employees, and other persons at the station."

Cross-examination:

" * * * I receive my salary for police duty for protecting the railroad properties from the Southern Railway Company, and I was also special officer for the city of Danville, operating with the police department there, and was authorized to arrest anybody for violations of the state laws, both as police officer of Danville and as special officer of the railway company. I would take prisoners to the city jail."

The learned trial judge, in disposing of defendant's motion for a directed verdict, among other things said:

"There is no question, from the evidence so far submitted, that the plaintiff was subjected to an unwarranted and brutal assault by Regan, and that, if Regan can be said to have been at the time an agent, servant, or employee of defendant, acting within the scope and performance of his duties as such, and acting for and on behalf of the defendant, the latter would be liable."

Being of the view, however, that the decision of the general term in Wells v. Washington Market Co., 19 D. C. 385, was applicable, the court felt constrained to follow the ruling in that case.

[1] That the plaintiff sustained the relation of passenger, we think, is not open to serious question. Under the evidence he was rightfully on the train, and was not confined to any particular part of it. Apparently he was engaged in furnishing a service with which the railroad company desired its passengers to be supplied. B. & O. R. Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, relied upon by the defendant, is not in point, for there Voigt was an express messenger, whose duties confined him to the express car, and his relation to the railroad company was governed by the contract between that company and the express company. If the defendant in this case desired to challenge plaintiff's status as a passenger, it should have introduced evidence upon which to base such a contention. This it did not do, and the court is not at liberty to assume that he was other than what the record indicates, namely, a passenger.

We will now review the decisions in other jurisdictions in which the question here in issue was considered.

In Sharp v. Erie R. Co., 184 N. Y. 100, 76 N. E. 923, 6 Ann. Cas. 250, a boy 17 years old, with companions, was stealing a ride on one of defendant's freight trains. Being warned that there were detectives in the railroad yard which the train was approaching, they jumped from the train and were pursued by a special officer named Wheeler, who, after they had reached a point about 100 feet from the railroad premises, fatally shot the boy. The question, as stated by the court, was whether the railroad company could be held responsible for the act of Wheeler in killing the boy. The claim there, as here, was that the officer acted in a dual capacity, "that while he was the servant of the defendant for certain purposes, he was also a public officer, and that he killed the boy while acting in the capacity of such officer and not as the servant of the defendant." He was paid by the defendant, and his duties were to protect the company's interests on the right of way, to keep tramps from trains and look after robberies that might occur at stations and on freight cars in the yards and stations, "and generally to look after crimes committed against the railroad company on the

right of way. It was part of his duty to drive off and keep off trespassers from the company's property." The court said:

"A railroad company, employing a servant who happens to be a public officer, acquires no immunity from such employment. Constables and policemen are often employed by corporations in the same capacity as Wheeler was. It is not beyond the province of a jury in such a case to find that the official acts of the employee are to be used for the benefit of the defendant and in protection of its interests or property. And hence in such a case the character of the servant's act is to be determined in the same way and upon the same principles as if he was not a public officer at all. If he acts maliciously, or in pursuit of some purpose of his own, the defendant is not bound by his conduct; but if, while acting within the general scope of his employment, he simply disregards his master's orders or exceeds his powers, the master will be responsible for his conduct."

It was ruled that under the evidence it was a question for the jury whether Wheeler, when he fired the fatal shot, was acting as defendant's servant or as a public officer.

In Brewster v. Interborough Rapid Transit Co., 68 Misc. Rep. 348, 123 N. Y. Supp. 992, the plaintiff, while standing on one of defendant's platforms to board a car, was admonished by a special officer to stop pushing and told that unless he did so the officer would "smash his head off." Plaintiff answered, "Go ahead and do it." Thereupon the officer assaulted the plaintiff. It appeared that the officer sustained substantially the same relation to the transit company as did the special officer in Sharp v. Erie R. Co., just discussed, and the court said:

"The defendant, as a common carrier, owed a duty to its passengers that its employés should treat them in a decent manner and protect them from attack. * * * Nor does the fact that Kellerman was a 'special officer' in any way alter the situation or relieve the defendant from its liability. It would be preposterous to hold that, because the defendant caused its employé to be designated as a 'special officer,' it was thereby relieved of responsibility for his acts. If, by virtue of his designation as a special officer, Kellerman became a public official, his duty to the public was thereby increased; but the defendant was not relieved from the same responsibility for his acts that it would be under for the acts of any other of its employés. It would, indeed, be an anomaly if the fact that, because the public power had been used to designate the employé of the defendant a public officer, the defendant should on that account be relieved of responsibility for the acts which its employé performs in attempting to discharge his duties to it."

Deck v. B. & O. R. Co., 100 Md. 168, 59 Atl. 650, 108 Am. St. Rep. 399, closely paralleled in its facts the case of Sharp v. Erie R. Co., for in that case the plaintiff was shot by a special officer employed by the defendant, under similar circumstances. There, considering the question whether at the time of the shooting the special officer, Steiner by name, "was attending to the business of the company, and, if so, whether he was acting within the scope of his duty," the court said:

"Assuming, for, if what we have already said is correct, we have a right to assume, that Steiner was present at the time of the shooting, and that he was in the employ of the company as its special officer, detective, or special policeman, and assuming, also, that the plaintiff and his companions had been on one of its trains as trespassers and acting in a disorderly manner, it would not require much testimony to establish the fact that he was there, not on any business of his own, but for the purpose of protecting the company's employees and its property."

The court further stated that whether the act of the servant complained of is within the scope of his duties while acting in furtherance of his master's business "is generally to be determined by the jury as a matter of fact and not by the Court as a matter of law." Considering the question whether Steiner was acting as an employee of the company or as a commissioned officer of the state when the injury was inflicted, the court said:

"It appears to be clear from the testimony that he was employed and paid by the defendant at the time indicated and that he was then acting as policeman and detective. As we have already said, it must be assumed that he had some implied authority and duties, even if none were expressly proved, and it certainly is not assuming very much to infer from the general nature of his employment that it was his duty to remove trespassers from the train. It must be remembered that, so far as the evidence shows there was not an actual attempt to arrest the plaintiff, but he was shot by the detective or policeman a few moments after he jumped from the train, and before he had gone more than 10 or 15 feet from it."

The court held that the evidence made a case for the jury.

In Southern Railway Co. v. Grubbs, 115 Va. 876, 80 S. E. 749, a passenger, after an altercation with the conductor, was assaulted by him. The conductor was a conservator of the peace, and the defendant contended that, as he was an officer of the state, it was not responsible for his conduct. The court held this a question for the jury.

In Layne, Adm'r, v. Railway Co., 66 W. Va. 607, 67 S. E. 1103, the deceased had been fatally shot by a special officer appointed and commissioned by the Governor of the state and detailed for service on defendant's road. The shooting grew out of a controversy with a porter over payment of fare, and the court said:

"We are of the opinion that the capacity in which Howery [the special officer] acted was a question proper to be submitted to the jury under the circumstances disclosed by the evidence. * * * On the occasion of the killing, he responded quickly and eagerly to the call of the train porter, when it was supposed his services would be needed for the purpose of enforcing payment of chair car fare. The evidence leaves it uncertain, and a question for the jury, whether Layne, at the time he was killed, had committed any breach of the peace, or done any unlawful act, for which he could have been arrested. According to the testimony of the witnesses for the plaintiff, he had not behaved in a riotous or disorderly manner, or done any other unlawful act."

In Taylor v. N. Y., etc., R. Co., 80 N. J. Law 282, 78 Atl. 169, 39 L. R. A. (N. S.) 122, the opinion was written by Chancellor Pitney, later a Justice of the Supreme Court of the United States. It was held that, if railroad policemen appointed and commissioned under the state statute—

"are employed by the railroad company, or any other corporation or person, in matters aside from their duties under the statute, the principal may be held answerable for what they do, the same as in other cases of agency. Their commissions as railway policemen cannot be made a cloak to shield the company from responsibility for what may be done by such agents under the employment of the company, aside from the strict and proper performance of their duties as officers under the act."

Counsel for defendant have directed our attention to the later New Jersey case of Goldberg v. Central R. Co. of New Jersey, reported in

117 Atl. at page 479, but that case does not purport in any way to disturb the former ruling.

To the same effect, see Kusnir v. Pressed Steel Car Co. (D. C.) 201 Fed. 146; Dickson v. Waldron, 135 Ind. 507, 34 N. E. 506, 35 N. E. 1, 24 L. R. A. 483, 488, 41 Am. St. Rep. 440; Hirst v. Fitchburg R. R., 196 Mass. 353, 82 N. E. 10; Foster v. Grand Rapids Ry., 140 Mich. 689, 104 N. W. 380; Heggen v. Fort Dodge R. R. Co., 150 Iowa, 313, 130 N. W. 148; Daniel v. Petersburg R. R., 117 N. C. 592, 23 S. E. 327. And see also, Axman v. Washington Gaslight Co., 38 App. D. C. 150.

Coming now to the case of Wells v. Washington Market Co., 19 D. C. 385, we find that was an action of false arrest, and that the duties of the special officer who made it were to collect rents and keep order in the market house, and that he had no authority from the company to make arrests, nor was his act in this instance ratified by the company. As held in Deck v. B. & O. R. Co., 100 Md. 182, 185, 59 Atl. 650, 108 Am. St. Rep. 399, the principles announced in false arrest and malicious prosecution cases have no application in cases of assault.

[2] In the present case, Special Officer Regan was appointed under the authority of section 3944 of the Virginia Code of Laws, which provides that such an appointment may be made by the president or executive officer of any railroad company incorporated by the state, with the approbation of the circuit court of any county or corporation court of any city through which the road passes and has its chief office, and may be removed by such president or other executive officer at his pleasure, provided only that the court giving such consent may revoke it at any time. Such officer—

"shall have authority in all cases in which the rights of such railroad company are involved, to exercise within the state all powers which can be lawfully exercised by any constable or police officer for the preservation of the peace, the arrest of offenders and disorderly persons, and for the enforcement of laws against crimes."

The inference deducible from Regan's testimony in this case is that his sphere of action was practically confined to railroad property, for he says his duties with the company "covered the Danville division, between Monroe, Va., and Salisbury, N. C.," including "the station where trains came in and went out." He therefore was primarily the servant of the company; his duties as a public officer being incidental. It is apparent, then, that the jury would have had the right to find that his duties were of a dual character, and that his acts primarily were in the interest and for the benefit of the company, although in certain instances he might act independently of it. Under the evidence plaintiff had committed no breach of the peace or any unlawful act warranting his arrest. Why, then, was he molested by Regan? Evidently because, in Regan's view, he had flirted with a passenger (a term of uncertain signification), and was subject to discipline therefor. In such circumstances, it would be going far, we think, to rule as matter of law that the jury would not have been justified in finding that Regan was acting for the supposed benefit of and as agent for the

company, in the line of his duty, and within the general scope of his authority. Under such a finding the company would be liable for his wrongful acts. The facts, as disclosed by the evidence, must govern our decision, and under those facts we think it plain that a case was made for the jury. The defendant was responsible for Regan's presence, and, if he was acting for it at the time, should not be immune from the consequences of his conduct. The law has been so fully stated in the decisions to which we have referred that further discussion is unnecessary.

[3] One point remains. It is suggested by counsel for the defendant that inasmuch as the purpose for which the government permitted itself to be sued was compensation and not punishment, this action would not lie. In making this contention, however, counsel evidently overlooked the nature of this action, which is one for the recovery of that for which the government permitted itself to be sued; that is, compensation for injuries inflicted. See Mo. Pac. R. R. Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087.

The judgment is reversed, with costs, and cause remanded for a new trial.

Reversed and remanded.

SMYTH, Chief Justice (concurring specially). Doubting that the act complained of came within the scope of Regan's specific authority, I prefer to place my concurrence in the judgment of reversal upon the broad ground that Seymoure was a passenger, and as such entitled to protection from the railroad company against assaults by its employees (Hayne v. Union Street Railway Co., 189 Mass. 551, 76 N. E. 219, 3 L. R. A. (N. S.) 605, 109 Am. St. Rep. 655; Pendleton v. Kinsley, 3 Cliff. 416, Fed. Cas. No. 10922; Kansas City Southern Railway Co. v. Willsie, 224 Fed. 908, 140 C. C. A. 352; New Jersey Steam-Boat Co. v. Brockett, 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049; 10 C. J. § 1325 et seq.), and that this duty of protection was violated by the railroad company, through Regan, when he made the attack in question.