# Richmond

## SOUTHERN RAILWAY COMPANY V. GRUBBS.

### January 15, 1914.

1. MASTER AND SERVANT—*Tort of Servant—Damages—Compensation—Punishment.*—The master is liable to make *compensation* for injuries done by his servant, within the scope of his employment, although not previously authorized nor subsequently ratified by the master, but he cannot be held for exemplary or punitive damages merely by reason of wanton, oppressive or malicious intent on the part of his servant. In order to subject the master to *punitive* damages for the act of his servant, the act must have been previously authorized or subsequently ratified by the master.

2. MASTER AND SERVANT—*Tort of Servant—Failure to Discharge—Ratification.*—The mere failure of the master to discharge his servant after the commission of a wrongful act by the servant does not constitute a ratification of such act.

3. INSTRUCTIONS—*Read as a Whole—Different Theories of Case.*—Instructions are to be read as a whole, and if, when this is done, it is seen that the defendant's theory of the case was correctly and strongly presented, it is not error to give an instruction presenting the plaintiff's theory of the case.

4. CARRIERS—*Assault on Passenger—Damages—Limit—Case at Bar.*—In an action by a passenger against a railroad company to recover damages for an assault committed by the conductor on a passenger, where the damages are laid in the declaration at $10,000, it is not error to instruct the jury that, in assessing the damages of the plaintiff, they shall "assess his damages at such sum as will compensate him for such physical injuries and mental sufferings, if any, as were occasioned by such assault, not exceeding the sum of $10,000 claimed in the declaration." The instruction is not amenable to the objection that it gave the jury to understand that there was no limit to the amount they might award except the $10,000 claimed in the declaration.

5. CARRIERS—*Railroad Conductor—Conservator of Peace—Object of Section 1294-d (45) of Code.*—Section 1294-d, paragraph 45, of the Code, which constitutes the conductor of a railroad train a peace officer of the State, was never intended to release common

carriers from the high and important duty resting upon them to diligently care for and protect their passengers. Its object was to increase their facility for affording the traveling public protection by making their conductors conservators of the peace.

6. CARRIERS—*Railroad Conductor—Functions—Peace Officer—When So Acting—Question for Jury.*—The functions of a conductor of a railroad train are primarily as a representative of the railroad company, and his duty to the passenger is the same as that of the company. His duties as conservator of the peace are merely incidental to his office of conductor. Neither he nor his company can make use of his incidental functions as a conservator of the peace as a pretext to shield themselves from liability for his wrongful and oppressive acts as conductor. Whether or not, in a given case, the conductor was, in fact and in good faith, acting in the capacity of conservator of the peace, and not in his capacity of conductor, is a question for the jury under all the facts and circumstances of the case, and if it is relied on to shield the company from liability the company must show the necessity and good faith of the transaction.

7. CARRIERS—*Passenger—Ceasing to Be Passenger—Assault by Conductor—Question for Jury.*—Whether or not a passenger who fails to pay a small extra sum demanded of him because he had not purchased a ticket has lost his rights as a passenger, and whether the conductor was justified in making a violent and injurious assault upon him, are questions for the jury to determine, upon all the facts and circumstances of the case, under proper instructions from the court.

Error to a judgment of the Circuit Court of Campbell county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Coleman, Easley & Coleman,* for the plaintiff in error.

*Don Halsey* and *Volney E. Howard,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action of trespass on the case was brought by William T. Grubbs to recover of the Southern Railway Company damages for injuries alleged to have been sustained by him while a passenger on one of the defendant's trains. There was a verdict and judgment for the plaintiff to which this writ of error was awarded.

It appears that the plaintiff boarded the defendant's passenger train at Altavista, his destination being Lynchburg. While ordinarily the conductor of a train takes up tickets and collects fares, it appears that on this train another employee, designated as a "ticket collector," was solely charged with that duty. It further appears that when approached by the ticket collector, the plaintiff handed him sixty-five cents, the price of a ticket from Altavista to Lynchburg. Thereupon the collector told the plaintiff that he would have to pay ten cents additional as he had no ticket, for which he would give him a "draw back ticket" redeemable at any station or ticket agency of the company on presentation. The plaintiff refused to pay the additional ten cents, claiming that the ticket window at Altavista where he boarded the train was closed, that he could not get a ticket, and that he could pay no more.

The evidence tends to show that the plaintiff became excited and noisy, and that the ticket collector desisted and called the conductor. The evidence of the plaintiff tends to show that immediately upon the arrival of the conductor, he violently assaulted the plaintiff, striking him in the face and choking him, and after vilely abusing him and insulting him, threw him across the arm of the seat and injured his back. The evidence as to the plaintiff's conduct and also as to that of the conductor is conflicting, and no attempt has been made to do more than state it sufficiently to show the character of the case which was submitted to the jury.

The first assignment of error is that the court 'erred in giving for the plaintiff the sixth instruction, which is as follows:

"The court instructs the jury that if they shall find for the plaintiff, in ascertaining the damages they should take into consideration the bodily harm, humiliation and mental distress, if any, which may have been suffered by the plaintiff, and they should award him such damages as they shall deem proper compensation therefor, and in arriving at the sum to be awarded they may take into consideration whether or not the said injuries were wantonly inflicted."

The latter part of this instruction very plainly told the jury that they might award punitive or exemplary damages. The language, "and in arriving at the sum to be awarded they may take into consideration whether or not the said injuries were wantonly inflicted," would be meaningless unless it was intended to authorize the ascertainment of vindictive damages. There is no evidence that the conduct of the conductor in this case was authorized, or that it was ratified or approved by the defendant company.

In the case of *N. & W. Ry. Co.* v. *Neely,* 91 Va. 539, 22 S. E. 367, it is said that while a master is liable, to the extent of compensatory damages, for the unlawful act of his agent committed in the course of his employment, whether ratified or not, that in order to recover punitive damages of the master for the tortious act of the servant, ratification by the master must be shown. And in the case of *Sun Life Ins. Co.* v. *Bailey,* 101 Va. 443, 44 S. E. 692, it is held that in an action against a corporation to recover damages for the publication by its agent of a libel, if the publication was not previously authorized or subsequently ratified by the defendant, the plaintiff could recover only actual or compensatory damages; citing among other cases, *Lake Shore, &c., Co.* v. *Prentice,* 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, wherein Mr. Justice Gray, delivering the

opinion of the court, said: "In this court, the doctrine is well settled, that in actions of tort the jury, in addition to the sum awarded by way of compensation for the plaintiff's injury, may award exemplary, punitive or vindictive damages, sometimes called smart money, if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirt of mischief or criminal indifference to civil obligations. But such guilty intention on the part of the defendant is required in order to charge him with exemplary or punitive damages." "Examplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent, within the scope of his employment, cannot be held for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent."

In *N. & W. R. Co.* v. *Lipscomb*, 90 Va. 137, 17 S. E. 809, 20 L. R. A. 817, this court quoted as follows from *Hogan* v. *Providence R. Co.*, 3 R. I. 88-91, 62 Am. Pr. 377, cited also in 147 U. S., 13 Sup. Ct., 37 L. Ed., as follows: "We do not see how such damages can be allowed, when the principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him *particeps criminis* of the agent's act.

"No man should be punished for that of which he is not guilty. When the proof does not implicate the principal, and, however wicked the servant may have been, the principal neither expressly nor impliedly authorizes or ratifies the act, and the criminality of it is as much against him as against any other member of society, we think it is quite enough that he shall be liable in compensatory damages for the injury sustained in consequence of the wrongful act of a person acting as his servant."

The plaintiff relies upon the failure of the defendant company to discharge the conductor, before trial, as a ratification of the conductor's alleged wrongful act. This position is not tenable.

As said in *Toledo R. Co.* v. *Gordon,* 143 Fed. 95, 74 C. C. A. 289, "It would indeed be a harsh rule—harsh in its effect on all employees—that would hold a railroad company to have ratified the employee's act merely because before trial the employee was not discharged; such a rule would put their continued employment in jeopardy every time an accident occurred, not because the employee was shown to have been guilty of wanton conduct, but because the railway company stood in danger that wantonness might be established."

In the light of the authorities cited we are of opinion that the plaintiff's sixth instruction was erroneous and should not have been given.

The second assignment of error is to the action of the court in giving the plaintiff's fourth instruction.

In brief, this instruction told the jury that if they believed from the evidence that the plaintiff was violently assaulted and choked by the conductor only because he refused and failed to pay full fare and without doing anything to justify the assault, they must find for the plaintiff and assess his damages at such sum as will compensate him for such physical injuries and mental sufferings, if any, as were occasioned by such assault, not exceeding the sum of $10,000 claimed in the declaration.

This instruction does not, as contended, unduly emphasize the plaintiff's theory of the case. Instructions must be read as a whole. When this is done, it is seen that the defendant's theory of the case was correctly and strongly presented in a number of instructions given for both the plaintiff and the defendant, so that the defendant could not have been prejudiced by the form of this instruction.

56

Nor is there any merit in the contention that the last clause of the instruction gave the jury to understand that there was no limit to the damage they might award except the $10,000 claimed in the declaration. On the contrary, the jury were expressly limited in their ascertainment of damages, if they believed the plaintiff was entitled to recover, to *such sum as would compensate him for such physical injuries and mental sufferings as were occasioned by the assault.* The reference to the damage claimed in the declaration was merely to inform the jury that in no event could they exceed that limit.

The third assignment of error is to the action of the court in refusing certain instructions asked for by the defendant company.

Instruction No. 1 asked for by the defendant is very involved and difficult to understand. Its purpose seems to be to peremptorily tell the jury that they must find for the defendant, because there was no evidence that the conductor, or the ticket collector and baggagemaster, who were called by the conductor to his assistance, were acting within the scope of their employment or in the line of duty conferred upon them at the time the alleged wrongs were inflicted upon the plaintiff.

The effect of this instruction is to announce the doctrine that a carrier of passengers cannot be held liable for compensatory damages to a passenger who has been maltreated by its officials in charge of its train, unless he proves that such employees were previously authorized by the defendant to commit the wrong complained of, or that their conduct was subsequently ratified. The contrary is abundantly shown to be the law by the authorities already cited.

No comment upon instruction No. 2, asked for by the defendant, is necessary further than to say that it is amenable to the same objection pointed out with respect to No. 1, and was therefore properly refused. In support

of these instructions the defendant relies upon the Code, section 1294-d, par. 45, which constitutes the conductor a peace officer of the State, and insists that the only authority the conductor has with reference to passengers is derived from that statute, and, therefore, that the conductor is not an officer of the company at all, but an officer of the State; that being an officer of the State, the defendant company is not responsible for his conduct, and cannot be held liable upon any supposed duty of protection that it owed the plaintiff.

It is sufficient to say that the statute mentioned was never intended to release common carriers from the high and important duty resting upon them to diligently care for and protect their passengers. Its object was to increase their facility for affording the traveling public protection by making their conductors conservators of the peace. *Gillingham* v. *Ohio River R. Co.*, 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798, 29 Am. St. Rep. 827.

No objection is assigned to the court's refusal to give instruction No. 3. This instruction was clearly unsound and, therefore, properly rejected.

Instructions Nos. 4 and 7 relate to the same subject and will be considered together. No. 4, in effect, told the jury that the conductor could alone determine in what capacity he acted in making the alleged assault on the plaintiff, whether as conductor or conservator of the peace, and that he having testified that he acted in his character as conservator of the peace, without countervailing evidence, they must find for the defendant; the *prima facie* presumption of the law being that the conductor did act in his capacity as a conservator of the. peace. By instruction No. 7 the jury were told not only that a conductor was a conservator of the peace, but that the defendant company was not liable for any act of his, as such, even though he exceeded his authority and his act was unlawful.

The effect of these instructions was to make the mere claim of the conductor that he was acting as a conservator of the peace conclusive of the case, as a presumption of law, without regard to whether the facts and circumstances of the case justified his course of conduct. In other words, the contention is that being a corservator of the peace he is thereby taken out of the control of the company, and out of the sphere of the company's responsibility for his acts, provided he chooses to assume to act under the guise of a conservator of the peace, without any reference to the question whether or not he was, in good faith, justified in assuming that role.

The functions of a conductor are primarily as a representative of a railroad company, and his duty to the passenger is the same as that of the company. His duties as a conservator of the peace are merely incidental to his office of conductor. Neither he nor his company can make use of his incidental functions as a conservator of the peace as a pretext to shield themselves from liability for his wrongful and oppressive acts as conductor. The instructions under consideration would afford railroad companies a ready means of escape from all responsibility to passengers who were wrongfully maltreated by conductors. It is a question for the jury to determine, upon all the facts and circumstances of the case, whether or not the conductor was, in fact and in good faith, acting in the capacity of a conservator of the peace, and not in his capacity of conductor; and if it is relied on to shield the company from liability, the company must show the necessity and good faith of the transaction. It follows from what has been said that these two instructions were properly refused.

Instructions 5, 6, 10 and 11, which were properly refused, cover the same ground and will be briefly considered together. By each of these instructions the jury

was, in effect, told that the plaintiff was not a passenger at all but a trespasser. They are all based upon the isolated fact that the plaintiff did not pay without protest the additional ten cents that was demanded of him by the ticket collector. They each ignore the conceded fact that the plaintiff paid sixty-five cents, the price of a ticket from Altavista to his destination, which the collector received and kept, and wholly disregard all the other evidence in the case which tends to show that when the plaintiff arrived at the station the ticket office was closed so that he could not buy a ticket, and that he had no more money than the sixty-five cents and was, therefore, powerless to pay the additional ten cents. The instructions rest alone upon the bare fact that the plaintiff failed to pay the ten cents and thereby lost his rights as a passenger, and justified his immediate arrest by the conductor as a wrongdoer. It was the province of the jury to determine, upon all the facts and circumstances shown of record, and under proper instructions, whether or not the plaintiff was a passenger, and whether, under all the circumstances, the conductor was justified in the violent and injurious assault he is alleged to have made upon him.

For the error of the court in giving instruction six for the plaintiff, which authorizes the jury to assess the defendant company with punitive damages, the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial, not in conflict with the views expressed in this opinion.

*Reversed.*