# Staunton

## Norfolk and Western Railway Company, a Corporation v. C. Frank Haun.

September 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Greever & Gillespie* and *Crockett & Tutwiler*, for the plaintiff in error.

*Lilly & Lilly* and *J. Powell Royall*, for the defendant in error.

Hudgins, J., delivered the opinion of the court.

E. G. Harman and D. W. Franklin, on motion of the Norfolk & Western Railway Company, were duly appointed, by different courts, special police officers under the provision of Code, section 3944, as amended by Acts 1930, chapter 353. They received no compensation from the Commonwealth, but were paid by the Norfolk & Western Railway Company. These officers were notified that coal, in interstate transit, had been repeatedly stolen from cars temporarily on a side-track in the Norfolk & Western Railway yards at Flat Top, Tazewell county, Virginia. Their superior officers instructed them to make an investigation of these complaints. They requested R. M. Mathews, regular police officer of Tazewell county, to assist them in the criminal investigation.

The three officers on the night of January 9, 1935, while hidden on defendant's yard, saw two men throwing coal off a car temporarily standing on the siding. Later the two special officers saw two men carry the coal from the side of the track, where they had thrown it, to the side of the county highway, or just off the railway company's right of way. Shortly thereafter, and while two men were loading the coal into an automobile, the two special officers ran up within 30 feet of them, turned on a flash light and attempted to arrest the thieves. One ran in one direction, and the other in another. One officer pursued one, the other officer the other. Two shots were fired, one by each officer. The man, L. B. Wilson, whom Franklin pursued, submitted to arrest and was brought back to the automobile. C. Frank Haun, the other thief, was hit in the back and badly wounded by the shot from Harman's pistol. He was taken by the officer, in his own car, loaded with the stolen coal, to a hospital located in Bluefield, West Virginia, and given the proper medical aid. Wilson was taken to the home of Mr. Pittman, special police agent in charge of the Pocahontas division of the railway company. Wilson, after signing a written account

of the theft of the coal, and the shooting of his brother-in-law, C. Frank Haun, was released.

For several days Haun's life was in serious jeopardy from the bullet wound, but he eventually recovered and instituted this action, alleging that at the time he was shot Harman was acting as a servant for defendant company. The trial court entered judgment for $4,000 on the jury's verdict, to which judgment defendant obtained this writ of error.

The trial court adopted plaintiff's view of the case, and held that whether Harman was acting within the scope of his employment, as agent for defendant, or as a police officer of the Commonwealth at the time of the shooting, was a question of fact to be determined by the jury.

The general rule is that in the absence of statute a private person or corporation is not responsible for the acts of a special officer appointed by public authority, but employed and paid by the private person or corporation, when the acts complained of are performed in carrying out his duty as a public officer. 39 C. J. 1273; 35 A. L. R. 681.

The statute (Code, section 3944, as amended by Acts 1930, chapter 353) clothes two classes of persons with limited police authority. The latter part of the section makes certain employees of common carriers, such as conductors, motormen, operators of motor busses, station and depot agents, when on duty, conservators of the peace, with the same power to make arrests that justices of the peace have. These powers are conferred upon the named employees by virtue of the duties assigned them by the employer. No examination or confirmation of appointment of these employees is made by public authority. The duties they are employed to perform are sufficient, under the statute, to clothe them with the power stated. This court, dealing with this class of employees of common carriers, in *Southern R. Co.* v. *Grubbs*, 115 Va. 876, 884, 80 S. E. 749, 752, said: "The effect of these instructions was to make the mere claim of the conductor that he was acting as a conservator of the peace conclusive of the case, as a presumption of law, without regard to whether the facts and circumstances of the case justified his

course of conduct. In other. words, the contention is that being a conservator of the peace he is thereby taken out of the control of the company, and out of the sphere of the company's responsibility for his acts, provided he chooses to assume to act under the guise of a conservator of the peace, without any reference to the question whether or not he was, in good faith, justified in assuming that role.

"The functions of a conductor are primarily as a representative of a railroad company, and his duty to the passenger is the same as that of the company. His duties as a conservator of the peace are merely incidental to his office of conductor. Neither he nor his company can make use of his incidental functions as a conservator of the peace as a pretext to shield themselves from liability for his wrongful and oppressive acts as conductor. The instructions under consideration would afford railroad companies a ready means of escape from all responsibility to passengers who were wrongfully maltreated by conductors. It is a question for the jury to determine, upon all the facts and circumstances of the case, whether or not the conductor was, in fact and in good faith, acting in the capacity of a conservator of the peace, and not in his capacity of conductor; and if it is relied on to shield the company from liability, the company must show the necessity and good faith of the transaction. It follows from what has been said that these two instructions were properly refused."

The same section authorized circuit and corporation courts, on motion of the proper officers of a railway company, to approve the appointment of designated persons as police officers, "who shall have authority in all cases in which the rights of such railroad company are involved, to exercise within the state all powers which can be lawfully exercised by any constable or police officer for the preservation of the peace, the arrest of offenders and disorderly persons, and for the enforcement of laws against crimes * * * but, any court giving such consent may at any time revoke it."

The police power, given these special police agents, is not confined to any political subdivision of the State, but is

statewide, and is equal to that of any other police officer, when and only when, the rights of the railroad are involved. This court, in dealing with this class of officers, in *Norfolk & Western R. Co.* v. *Perdue,* 117 Va. 111, 112, 83 S. E. 1058, 1059, said: "The defendants, on their part, maintained that Horgan was a police agent, appointed under the provisions of the Code of Virginia, and was acting in that capacity and not as the agent of the railway company when the arrest was made. Without going into this aspect of the case in any detail, we content ourselves with saying that the trial court maintained the contention of the defendants and gave to the jury an instruction as follows:

" 'The court instructs the jury that if they believe from the evidence that Richard A. Horgan was duly appointed a special police agent and qualified as such, that then, although it was upon the request of the Norfolk & Western Railway Company he was so appointed and qualified, and although he was paid by the Baldwin-Feltz Detective Agency for his services in acting as police agent, and in turn the Baldwin-Feltz Detective Agency was paid for his services by the Norfolk & Western Railway Company, still the Norfolk & Western Railway Company is in no way legally responsible for the acts of the said Richard A. Horgan when acting in the capacity of a police agent; the court instructing the jury that a police agent is as much an officer of the State as any other officer authorized by law to make arrests, and that if the arrest was made in this capacity by him the Norfolk & Western Railway Company is in no way responsible for his act.'

"The facts upon which this instruction is predicated were clearly established, and indeed were not controverted, so that the defendant in error, plaintiff in the court below, could not have recovered upon the case which he had up to that point presented."

This is not an action against the master for acts of its servant in making or causing the false arrest or imprisonment of plaintiff, but an action against the master on the theory of *respondeat superior,* based on the negligent use of firearms

by an officer in making an arrest for a crime committed in his presence. There is little, if any, dispute as to the facts. The plaintiff and his two confederates, as on former occasions, pursuant to a previous arrangement, drove two automobiles to Flat Top, for the purpose of hauling coal, which they proposed to take, or had taken, from cars moving in interstate commerce. They personally knew the officers. On the night in question and sometime before their arrest, they saw the officers pass the water tank, near the place where they were standing. G. L. Hagy, one of the three thieves, was frightened by the fact that the officers were in the neighborhood. According to his testimony, he abandoned the intention for the night, of hauling away any of the stolen coal. He said that he understood plaintiff and Wilson had reached the same conclusion. It is significant, however, that while plaintiff and Wilson were loading the coal in plaintiff's automobile, Hagy, with his automobile, was waiting some 200 yards away.

The officers were at Flat Top for the purpose of investigating crimes previously committed, and discovered plaintiff and Wilson in the act of stealing. When called upon to halt, both thieves fled. Wilson submitted to arrest, while plaintiff continued to flee until struck by a bullet accidentally discharged as Harman stumbled and fell over a pile of the stolen coal. In the argument both sides assumed that the accidental discharge of the pistol was due to the negligence of Harman, hence we will not discuss the evidence on the point.

Under the Virginia law, the value of the property stolen determines whether the crime is a felony or a misdemeanor. Larceny of goods moving in interstate commerce is a felony under the Federal law (18 U. S. C. A., section 409) regardless of the value of the property stolen. It is true the officers were not commissioned as such by virtue of any Federal authority, but at least they had the same right as a private citizen to make an arrest for a felony committed in their presence. Minor on Crimes and Punishments, page 37, states this right to be:

"Killing by an *Officer* upon Attempt to Arrest for *Felony*.

"If there be a warrant, indictment, *hue and cry*, or escape, an officer is justified in killing if accused *resists or flies*, whether he is guilty or innocent, and whether a felony has been committed or not; and so without a warrant, on justifiable suspicion founded on his own knowledge, or the *information of others*."

"Private persons, acting by themselves, and without a warrant.

"Supposing a felony *to have been committed*, and the party who is to be arrested *to be guilty of it,* private persons are indemnified for killing, like officers. But if there has been *no felony*, or the person slain *is innocent*, how probable soever the cause of suspicion, the slayer is guilty of manslaughter at least."

This principle, with two members of the court, including the Chief Justice, dissenting, was somewhat modified in *Hendricks* v. *Commonwealth*, 163 Va. 1102, 178 S. E. 8, where it was held that an officer was not justified in killing a suspected felon fleeing from arrest unless there is a necessity for it, and the existence of such necessity on the facts in that case, was a question to be determined by the jury.

█ It is the duty of a police officer to make an arrest, without a warrant, for a misdemeanor committed in his presence. This duty becomes more imperative if the same act constitutes a felony under the Federal law. The fact that Congress has made the commission of an act a felony, which under the State law is a misdemeanor, proves the aggravated nature of the crime. Such being the case, Harman was not only authorized, but it was his duty to make the arrest, not by virtue of any authority delegated or duty assigned to him by defendant, but by virtue of the duty imposed upon him as a commissioned officer of the sovereign, the Commonwealth of Virginia. In arresting plaintiff under the circumstances stated, Harman had the same authority, no more, no less, as if the owner of the stolen property had caused a warrant to be issued, directed to, and commanding him to make the

arrest. If such had been the case no question could have been successfully raised as to the capacity in which he acted.

Most of the cases cited by plaintiff were reviewed by the West Virginia court in *McKain* v. *Baltimore & O. Ry. Co.*, 65 W. Va. 233, 64 S. E. 18, 19, 23 L. R. A. (N. S.) 289, 131 Am. St. Rep. 964, 17 Ann. Cas. 634, and their holding summarized thus: "The import of these decisions is that such appointees, although paid for all their services by the persons at whose instances they are appointed, are not servants of such persons in respect to all the acts they perform by virtue of their offices; but only in respect to services rendered the company, such as defending or preserving its property. The line of distinction, sometimes hard to recognize under the circumstances of the particular case, marks the point at which the act ceases to be one of service to the employer, and becomes one of vindication of public right or justice, the apprehension or punishment of a wrongdoer, not for the injury done to the employer, but to the public at large."

The cases cited by plaintiff to support his contention that it is a jury question whether such employee acts in the capacity of servant or agent of the employer, or acts in the capacity of police officer, may be grouped under the following heads: (1) Those cases in which the employee is clothed with certain police authority by virtue of duties performed by him. *Southern Ry. Co.* v. *Grubbs*, 115 Va. 876, 80 S. E. 749. (2) Assaults upon, or false arrests of passengers to whom the employer owed the duty of protection. *George* v. *N. & W. Railway Co.*, 78 W. Va. 345, 88 S. E. 1036; *Layne* v. *C. & O. Railway Co.*, 66 W. Va. 607, 67 S. E. 1103; *Wilhelm* v. *Interurban Railway Co.*, 74 W. Va. 678, 82 S. E. 1089; *Moss* v. *Railroad Co.*, 75 W. Va. 62, 83 S. E. 721, L. R. A. 1915C, 1183; *Seymoure* v. *Director General of Railroads*, 53 App. D. C. 316, 290 F. 291. (3) Those cases in which the employee, in performing the duty assigned to him by the employer, committed the act complained of, or in ejecting trespassers from the premises, or enforcing some rule or regulation promulgated by the employer. *Deck* v. *Baltimore & Ohio Ry. Co.*, 100 Md. 168, 59 A. 650, 108 Am.

St. Rep. 399; *Taylor* v. *New York & L. B. R. Co.*, 80 N. J. Law 282, 78 A. 169, 39 L. R. A. (N. S.) 122; *Sharp* v. *Erie R. Co.*, 184 N. Y. 100, 76 N. E. 923, 6 Ann. Cas. 250; *Kusnir* v. *Pressed Steel Car Co.* (D. C.) 201 F. 146.

There are occasions when a private person may arrest without a warrant, but such a course "involves a perilous responsibility." Minor on Crimes and Punishment, page 242. These officers were sent to investigate violations of criminal laws. In the course of their investigation they discovered the perpetrators of former crimes, in the act of again committing a similar crime. To hold that the special police agent was, in this instance, acting as a private servant of the defendant in making the arrest, would render the provision of the statute clothing such officer with police authority nugatory, and make it as perilous for an employer to engage a person duly commissioned a police officer, to investigate violations of the criminal law, as to employ a private citizen for that purpose.

The cases cited by plaintiff hold that a special police officer for a railway company, though occupying a dual role, will be presumed to have acted in pursuance of his public duty when attempting to arrest a violator of the law. The officers, while not as clear and frank in giving their testimony as they might have been, not only stated that they made the arrest in the discharge of their duty as officers of the Commonwealth, but their conduct confirms this testimony. They saw the men an hour or more before they made the arrest, throwing coal off the car, and again when it was moved to the side of the highway. They did not stop the thieves, or attempt to recapture the property stolen. They waited until plaintiff had loaded the coal into the automobile, then made the arrest. The crime was complete. The action of the officer was not for the purpose of ejecting trespassers from the premises of the master, nor for the protection of property, or of recovering stolen property, but to apprehend the criminal so that he might be punished for the offense—the vindication of justice. This seems to be the only reasonable inference to be drawn from the uncontradicted evidence.

■ It is true that after the officers discovered the seriousness of plaintiff's wound they took him to a hospital, and not before a committing officer of Tazewell county. Any other course would have been inhuman. Later Harman was charged with violation of the maiming act in wounding plaintiff. It was stated in the argument that the charge was still pending against him. This is doubtless the reason that plaintiff was not prosecuted for his criminal act, but it is not sufficient to overcome the presumption that the officer, in making the arrest, was acting in the discharge of his public duty.

■ Plaintiff emphasizes the fact that in some States special police officers for railway companies are required to give bond for the faithful discharge of their duties as public officers, and contends that since no such bond is required in this Commonwealth, the employer should be liable for the acts of such police agents. The kind of bond, if any, required by public officers is a question to be determined by the legislature, and not by the courts. The test is not whether the injured party should be compensated for the illegal or negligent act of the officer, but in what capacity the officer acted at the time he committed the acts for which complaint is made. If the bond had been given defendant would be liable for any act of its servant or agent performed within the scope of his employment, and would not be liable if the act was done in performance of a public duty.

■ The evidence shows that Harman was acting in the discharge of his public duty in an attempt to enforce the criminal laws, and not in the capacity of servant of defendant. For such acts defendant is not liable.

*Reversed and final judgment.*