# Staunton

## NORFOLK UNION BUS TERMINAL, INCORPORATED v WILLIAM J. SHELDON.

September 8, 1948.

Record No. 3354.

Present, Hudgins, C. J., and Eggleston, Buchanan, Staples and Miller, JJ.

*James G. Martin & Sons*, for the plaintiff in error.

*Louis B. Fine*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

William J. Sheldon, hereinafter called the plaintiff, filed a notice of motion for judgment in the court below against the Norfolk Union Bus Terminal, Inc., and J. W. Webb, hereinafter called the defendants,[1] claiming damages for his alleged malicious prosecution by the defendants. There was a joint verdict of $1,500 in favor of the plaintiff against the two defendants, upon which the court entered judgment. The matter is before us on a writ of error awarded the Norfolk Union Bus Terminal, Inc. No complaint has been made by the defendant, Webb, of the correctness of the judgment which has become final as to him.

In the light of the jury's verdict the facts should be stated thus:

The Norfolk Union Bus Terminal, Inc., hereinafter called the Terminal Company, operates a terminal station at 119 Plume street, between Main and Plume streets, in the city of Norfolk, into which several bus lines run. The buses enter the terminal over a driveway from Main street, and

---

[1] The action was "dismissed" on the "motion of the plaintiff" as to a third defendant, the Norfolk Southern Bus Corporation.

park for the discharge and loading of passengers at a platform or platforms in the rear of the passenger station which fronts on Plume street.

At the time of the occurrences with which we are concerned, the defendant, Webb, held a commission from the Department of Public Safety of the city of Norfolk as a special officer or conservator of the peace. Webb was employed and paid by the Terminal Company, and the commission recited that it was his duty "to patrol, protect and preserve order upon certain private property now used or occupied" by the Terminal Company.

Shortly after eight p. m. on March 7, 1946, Roy L. Sawyer drove a car owned by the plaintiff, William J. Sheldon, from Main street along the lane used by busses in entering the rear of the station, and parked it at or near the platform designed for the use of busses in discharging and loading passengers. In addition to Sawyer, the car was occupied by Mrs. Lillian T. Mallard, the mother of the plaintiff (Sheldon), Sheldon's two small children, and a young lady, Miss Rachel Wright, who intended to become a passenger on a bus which would shortly thereafter leave the terminal.

Although Sheldon owned the car he was not at that time a passenger therein, and was in no way concerned with the manner in which the vehicle had entered the terminal, or where it had been stopped or parked.

Leaving Mrs. Mallard and the two Sheldon children in the car, Sawyer went into the bus station to assist Miss Wright with her baggage, which required only a few minutes.

In the meantime the defendant, Webb, observing that the car was stopped or parked in an improper place, proceeded to berate Mrs. Mallard, the only adult occupant of the car, for its improper parking. In response to Webb's inquiry, Mrs. Mallard stated that the car was owned by her son, who, she said, was then at the Byrd Theater, a short distance away.

When Sawyer returned to the car and indicated his intention to move it, Webb inquired whether he had a

driver's permit. Sawyer replied that he did not. Thereupon Webb got in the car and directed that Sawyer drive to police headquarters, some four or five blocks away. Upon reaching the police station, Webb swore out a warrant against Sawyer for "trespass on private property," and another against him for operating an automobile "with no driver's permit."

While these warrants were being written, Sheldon, the plaintiff, appeared on the scene. Sheldon, while waiting for the occupants of the car near the Byrd Theater which they were to attend by previous arrangement, had seen his car pass, headed for the police station, and followed it there.

Upon Sheldon's admission that he owned the car, Webb inquired whether he had a driver's permit. Sheldon produced a driver's license which, however, had expired. Webb then said: "This damned thing ain't no good." Sheldon replied that the license had expired while he was in the armed forces, and that it had not been renewed since his recent discharge. Webb's reply to this was: "That don't make no damned difference. I was in the last war."

Webb then directed that the justice of the peace issue a warrant against Sheldon for operating the car without a "driver's permit."

Although Sheldon explained to Webb that he (Sheldon) "was not driving the car," and "had not been around the bus station" at the time it had been improperly parked, Webb directed that the justice of the peace issue a second warrant against Sheldon, charging him with "trespass on private property" in violation of a city ordinance.[2]

Pursuant to Webb's directions the warrants were issued against both Sheldon and Sawyer. They were put under arrest, and being unable to furnish bail, were locked up and remained incarcerated for approximately three hours, until Mrs. Mallard could return to her home, near Great Bridge, in Norfolk county, and procure sufficient cash to secure their bail.

---

[2] The Norfolk City Code, section 896, provides: "If any person wilfully trespass upon the land or property of another in the city, he shall be fined not less than five nor more than one hundred dollars."

In the police court Sheldon was acquitted of both charges, and shortly thereafter the present action was instituted.

The lower court held, and so instructed the jury, that the defendant, Terminal Company, was not liable for damages arising out of the prosecution of the plaintiff, Sheldon, under the warrant charging him with operating the car without a driver's permit, but that a verdict against Webb alone might be based upon such prosecution.

While the record does not so disclose, it is conceded that the lower court's exemption of the Terminal Company from such liability was based upon the principle that, in prosecuting the charge that Sheldon had been operating the car without a driver's permit, Webb was acting in the discharge of his public duty in an attempt to enforce the criminal law of the State, and not in the discharge of any duty assigned to him by his employer, the Terminal Company.

This ruling was, in our opinion, correct. See *Norfolk, etc., R. Co.* v. *Haun*, 167 Va. 157, 165-167, 187 S. E. 481, 485.

But the trial court also held, and so instructed the jury, that if they believed from the evidence that Webb was acting within the scope of his authority as an employee of the Terminal Company in prosecuting the plaintiff, Sheldon, under the warrant charging him with trespassing upon the property of the Terminal Company, a verdict against the Terminal Company, as well as against Webb, might be predicated upon the prosecution under this latter warrant.

The Terminal Company contends that in so far as its liability is concerned this ruling was erroneous, and that under the holding in *Norfolk, etc., R. Co.* v. *Haun, supra*, it was not liable for the prosecution set on foot by Webb under the trespass warrant.

We do not agree with this contention. In our opinion the ruling of the trial court with respect to this phase of the case was correct. The undisputed evidence is that Webb was employed to patrol, protect and preserve order upon the property of the Terminal Company, and to enforce its rules and regulations with respect to the parking of

automobiles thereon. The fact that Sheldon's car had been improperly parked upon the property of the Terminal Company, so as to interfere with the use by an incoming bus of the platform immediately adjoining the station, was the basis of the trespass charge.

Clearly, then, such evidence brought the case squarely within the third class of cases referred to in *Norfolk, etc., R. Co.* v. *Haun, supra* (167 Va., at page 165, 187 S. E., at page 484), in which we held that when "the employee, in performing the duty assigned to him by the employer, * * * or in ejecting trespassers from the premises, or enforcing some rule or regulation promulgated by the employer," commits the act complained of, it is for the jury to say whether the employee was acting in the capacity of servant or agent of the employer, or in that of a public officer. See also, 35 Am. Jur., Master and Servant, section 542, p. 972, and authorities there cited.

In his original notice of motion the plaintiff charged, as the basis for the alleged malicious prosecution, that the defendants "did unlawfully and maliciously obtain *a warrant*" (emphasis added) for his arrest, charging him with "trespassing on private property and operating an automobile without having a driver's license." Over the objection of the defendants he was permitted at the trial to amend the notice, charging that the defendants "did unlawfully and maliciously obtain *warrants*" (emphasis added) for his arrest, charging him with trespass and operating an automobile without a permit.

The Terminal Company contends that the allowance of such an amendment resulted in an improper and fatal misjoinder of actions which was highly prejudicial to it, in view of the lower court's subsequent and proper ruling that as to the prosecution under the warrant charging the operation of the automobile without a driver's permit the Terminal Company was not liable, while as to the prosecution under the warrant charging trespass upon its property the Terminal Company might be held liable. The prejudicial effect of

such misjoinder was clearly impressed upon the court in the Terminal Company's motion for a new trial.

In our opinion this assignment is well taken. It is elementary that under our system of pleading, unless the acts of independent tort-feasors concur in producing a single indivisible injury or damage, they may not be sued jointly in a single action. As to such independent acts such tort-feasors must be sued separately.

In *McMullin* v. *Church*, 82 Va. 501, we held that in an action for malicious prosecution against two persons, counts against them jointly and counts against them severally could not be joined. This holding was expressly approved in *Tanner* v. *Culpeper Const. Co.*, 117 Va. 154, 165, 83 S. E. 1052, Ann. Cas. 1917E, 794, where we quoted with approval the following from Chitty on Pleading, 16th Ed., Vol. 2, p. 225:

"In actions by and against several parties, whether *ex contractu* or *ex delicto*, all the causes of action must be stated to be joint. Thus a plaintiff cannot, in a declaration against two defendants, state that one of them assaulted him, and in another part that the other assaulted him, or took his goods, for the trespasses are of several natures and against several persons, and they cannot plead to this declaration."

As is said in Burks' Pleading and Practice, 3d Ed., section 59, p. 123, "in case of joint wrongs, the plaintiff may at his election sue all, or any one, or any intermediate number, but in order to sue all there must have been a joint wrong."[3] See also, *Bowles* v. *Richmond*, 147 Va. 720, 725, 129 S. E. 489, 133 S. E. 593; Cooley on Torts, 4th Ed., Vol. 1, section 81, p. 258.

---

[3] As we pointed out in *McLaughlin* v. *Siegel*, 166 Va. 374, 376, 377, 185 S. E. 873, 874, while the master and servant, with respect to a tort committed by the servant and for which the master is liable under the principle of *respondeat superior*, are not technically "joint tort-feasors," they may be sued jointly, and the same principles applicable to actions against joint tort-feasors apply. See also, *Federal Land Bank* v. *Birchfield*, 173 Va. 200, 225, 226, 3 S. E. (2d) 405, 415; 35 Am. Jur., Master and Servant, section 592, pp. 1029, 1030.

The effect of the amendment was to permit the plaintiff, in violation of this principle, to combine in a single action against the two defendants one cause of action against Webb alone, as to which the Terminal Company could not be held liable, and another against Webb and the Terminal Company jointly, as to which both defendants might be held liable.

The prejudice to the Terminal Company, by reason of such misjoinder, became all the more apparent with the development under the evidence and the court's instructions that the jury might award punitive damages against Webb alone for the prosecutions set on foot under both warrants.

When it developed under the lower court's ruling that the plaintiff's causes of action were not the same as to both defendants, and that they could not properly be sued jointly as to the two torts, the plaintiff should have been required to elect as to which cause of action he would pursue. See Code, section 6102.

In our opinion the fatal misjoinder was not corrected by the court's instructions that the Terminal Company was not liable for *any amount* of damages for the prosecution under the driver's permit warrant, and was not liable for *punitive* damages for the prosecution under the trespass warrant. It is impossible to tell from the joint verdict against both defendants upon which prosecution the verdict was predicated.

While the amount of the verdict, viewed solely as compensatory, may not be excessive as a matter of law, it is certainly large, and lends much force to the argument of the Terminal Company that it includes punitive as well as compensatory damages.

Because of this fatal misjoinder, the verdict and judgment against the Terminal Company are set aside and the case is remanded for a new trial as to this defendant. In as much as the judgment against the defendant Webb has become final, and the question cannot arise upon a new trial, it is unnecessary that we decide whether the plaintiff may

properly maintain a joint action against the two defendants for damages arising out of the prosecution under the trespass warrant, with the right to recover compensatory damages against the defendant, Terminal Company, and both compensatory and punitive damages against the defendant, Webb.

*Reversed and remanded.*