Present:  All the Justices

BENJIE GODBOLT

v.  Record No. 950105    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                November 3, 1995
ROBERT W. BRAWLEY, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

The primary issue in this appeal is whether the trial court, in a civil action for assault, erred in admitting evidence that the plaintiff and one of his witnesses had been convicted of simple assault arising out of the same incident.

On September 12, 1993, the plaintiff, Benjie Godbolt, and some members of his family went to Scarlett Shockoe Kitchen and Bar (Scarlett), a restaurant and nightclub located in the City of Richmond.  Robert W. Brawley, an off-duty deputy sheriff, was working as a security guard outside the entrance to Scarlett.

During the evening, Godbolt and his family were involved in an altercation with a member of the band performing at Scarlett.  As the Godbolt family was being ejected from the club, Brawley attempted to detain them on the steps until the police arrived. A fight ensued.

Godbolt's brother, Terry, started the fight by punching Brawley.  As Brawley fought back using his blackjack, Benjie Godbolt became involved in the fight and also began punching Brawley.  Brawley fell to his knees and shot both Godbolt brothers with a gun that he had kept tucked in the waistband of his pants.

Both Benjie and Terry Godbolt were convicted of simple

assault arising out of this incident.  No charges were instituted against Brawley.

Benjie Godbolt filed a motion for judgment against Brawley and Scarlett, seeking recovery for damages resulting from the shooting.  At trial, the court allowed the jury to hear evidence that both Benjie and Terry Godbolt had been convicted of simple assault based on this incident.  After Godbolt rested his case, the trial court struck his evidence and granted the defendants' motions for summary judgment, ruling that Godbolt could not recover damages resulting from his own wrongdoing.

Godbolt contends that, although evidence of the actual conduct is admissible, the trial court erred in admitting evidence of the assault convictions.  He argues that the trial court improperly admitted this evidence as proof that he had committed a wrong against Brawley.  Godbolt asserts that this ruling was erroneous because, under the holding of Selected Risks Ins. Co. v. Dean, 233 Va. 260, 355 S.E.2d 579 (1987), mutuality must exist in order for evidence of the conviction to be admissible.  He argues that there is no mutuality between this case and his criminal prosecution because the parties, procedures, and purposes of the two proceedings differ.

In response, the defendants argue that, while a litigant generally is prohibited from presenting evidence of a prior criminal conviction in a civil case arising out of the same incident, this rule is subject to the exception that a civil

plaintiff cannot profit from his or her own criminal act.  The defendants assert that, under such circumstances, a defendant may introduce evidence of the plaintiff's prior conviction.

The defendants rely on Eagle, Star and British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314 (1927), in which this Court held that a convicted arsonist could not recover under an insurance policy for damages to a building that he had burned. Id. at 105-06, 140 S.E. at 321.  Based on this authority, the defendants argue that evidence of the Godbolts' convictions was properly admitted into evidence, in order to prevent Benjie Godbolt from recovering damages from the victim of the crime.

In examining this issue, we first consider Smith v. New Dixie Lines, Inc., 201 Va. 466, 111 S.E.2d 434 (1959), in which this Court stated that the general rule in Virginia is that
> a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered, or constitute a bar to a subsequent civil action based on the offense of which the party stands convicted or acquitted, and such judgment of conviction or acquittal is not admissible in evidence.

Id. at 472, 111 S.E.2d at 438.

This Court explained that "[t]he reason for the rule is that the parties in a criminal proceeding are not the same as those in a civil proceeding and there is a consequent lack of mutuality." Id., 111 S.E.2d at 438; see also Selected Risks Ins. Co., 235 Va. at 261, 355 S.E.2d at 579.  Two additional reasons supporting the rule are:  (1) the objects of the two proceedings are

different; and (2) the results and procedures of the two trials are different.  Aetna v. Czoka, 200 Va. 385, 389, 105 S.E.2d 869, 872 (1958).

In Aetna, we explained that, under the principle of mutuality, "[n]o party is, as a general rule, bound in a subsequent proceeding by a judgment, unless the adverse party now seeking to secure the benefit of the former adjudication would have been prejudiced by it if it had been determined the other way."  Id. at 389, 105 S.E.2d at 873 (citation omitted). However, an exception to the requirement of mutuality arises when a plaintiff attempts to recover for a harm that is the direct result of his or her own criminal conduct, and the dispositive issue in the civil action is the precise issue that the criminal conviction addressed.

In Eagle, Star, this Court held that evidence of an arsonist's criminal conviction was admissible in his subsequent civil action to recover damages under the insurance policy he had obtained on the premises.  This Court noted that the plaintiff "committed the felony, and [then sought] to recover the fruit of his own crime."  149 Va. at 105, 140 S.E.2d at 321.  In addition, the policy the plaintiff had obtained excluded recovery if the policyholder willfully burned his own property.  Id.

This Court observed that the central issue in the civil action was the same as the issue adjudicated in the criminal proceeding, namely, that the plaintiff feloniously burned his

goods with the intent to defraud his insurance company. The Court stated that this issue was "quite different from those generally raised by a plaintiff suing the alleged wrongdoer in tort." Id. at 105-06, 140 S.E. at 321. The Court held that to apply the rule of mutuality in that situation would enable the plaintiff to commit "the same fraud which has been established, condemned and punished in the criminal case." Id. at 106, 140 S.E. at 321.

Similarly, in Miller v. Bennett, 190 Va. 162, 56 S.E.2d 217 (1949), this Court held that the estate of a woman, who died after participating in an illegal abortion, could not recover damages for wrongful death from the person who performed the abortion procedure. This holding was based on the fact that the direct cause of the decedent's death was the illegal conduct in which she consensually participated.

Employing the same reasoning in Zysk v. Zysk, 239 Va. 32, 404 S.E.2d 721 (1990), this Court held that a woman who had contracted a sexually transmitted disease during premarital sex could not recover damages from her partner. The act of sexual intercourse was both consensual and illegal. We explained that "courts will not assist the participant in an illegal act who seeks to profit from the act's commission." Id. at 34, 404 S.E.2d at 722.

The plaintiffs in Eagle, Star, Miller, and Zysk were all willing participants in the intentional criminal acts that caused

their injuries.  The plaintiff in _Eagle, Star_ burned his own property.  The decedent in _Miller_ consented to, and thereby intentionally participated in, the abortion procedure which caused her death.  Likewise, the plaintiff in _Zysk_ participated in the illegal act of premarital sex that caused the transmission of the disease.

In contrast, the facts underlying Benjie Godbolt's assault on Brawley differ from the factual situations outlined above.  Unlike the plaintiffs in _Eagle, Star_, _Miller_, and _Zysk_, Godbolt's intentional criminal act was not the direct cause of his injury.  Although Godbolt may have intentionally engaged in assaultive behavior, he did not engage in the use of deadly force and did not consent to its use.  The direct cause of the injury for which Godbolt seeks damages is Brawley's use of deadly force.  Thus, the exception to the general rule does not apply under these facts, and we conclude that evidence of Godbolt's assault conviction is inadmissible, and that the trial court erred in ruling that the conviction barred Godbolt's action against the defendants.

We also conclude that evidence of Terry Godbolt's assault conviction is inadmissible.  A misdemeanor conviction of a witness is generally admissible only for impeachment purposes, and, then, only if the misdemeanor is one involving moral turpitude.  _Parr v Commonwealth_, 198 Va. 721, 723, 96 S.E.2d 160, 163 (1957).

Finally, we disagree with Scarlett's assertion that the trial court's award of summary judgment to Scarlett is harmless error. Scarlett contends that, as a matter of law, it is not vicariously liable for Godbolt's injuries, because Brawley was acting in his public function as a deputy sheriff when he attempted to restrain Godbolt.

Under certain circumstances, an employer may incur liability under the doctrine of respondeat superior for the acts of employees who are off-duty public officers. In <u>Glenmar Cinestate, Inc. v. Farrell</u>, 223 Va. 728, 292 S.E.2d 366 (1982), we held that

> [t]he test is: in what capacity was the officer acting at the time he committed the acts for which the complaint is made? If he is engaged in the performance of a public duty such as the enforcement of the general laws, his employer incurs no vicarious liability for his acts, even though the employer directed him to perform the duty. On the other hand, if he was engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer, it becomes a jury question as to whether he was acting as a public officer or as an agent, servant, or employee.

<u>Id.</u> at 735, 292 S.E.2d at 369-70 (citation omitted).

The record before us contains evidence that Brawley was acting in conjunction with other Scarlett personnel who were ejecting the Godbolts from the club. There is also evidence that the Godbolts had engaged in destructive behavior, such as breaking beer bottles, while they were on Scarlett's premises. We hold that this evidence raises a jury question whether Brawley was acting as an employee, attempting to impose order on

- 7 -

Scarlett's premises, when the incident occurred.

For these reasons, we will reverse the judgment of the trial court and remand this case for a new trial consistent with the principles expressed in this opinion.

<u>Reversed and remanded</u>.